## DURBROW & HEARNE *v.* UNITED STATES (No. 2338).[1]

1. CONSTRUCTION, PARAGRAPH 356, TARIFF ACT OF 1913.

The provision of paragraph 356, tariff act of 1913, for "Stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste * * * separate or in strips or sheets," does not exclude merchandise which is not ejusdem generis with that named, or which is not capable of being set with glass or paste, or which is not separate or in strips or sheets. These are not clauses of qualification and restriction, but of extension and amplification, and are intended to broaden the scope of the paragraph so as to include any material of metal even though set with glass or paste or imported separate or in strips or sheets, provided it was suitable for use, in the condition in which imported, in the manufacture of any of the articles enumerated in the paragraph.

2. BRASS CHAIN—JEWELRY MATERIAL.

Brass chain, described as "shot or ball chain," imported in 25 meter hanks, valued above 30 cents per yard but not of a "fancy pattern," of a kind chiefly used in the manufacture of jewelry though sold mainly by the appellants to electrical manufacturers, was properly classified under paragraph 356, tariff act of 1913, as materials of metal suitable for use in the manufacture of jewelry, rather than under paragraph 167 as brass articles not specially provided for, notwithstanding that it must be cut up to be so used.

## United States Court of Customs Appeals, May 19, 1924.

APPEAL from Board of United States General Appraisers, Abstract 46447.

[Affirmed.]

*B. A. Levett* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Bernard Hahn,* special attorneys), for the United States.

[Oral argument April 9, 1924, by Mr. Levett and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of brass chain, imported in hanks 25 meters in length.

It is described by the appraiser as "shot or ball chain in long lengths," and assessed for duty by the collector at 50 per cent ad valorem, as material of metal used in the manufacture of jewelry, under paragraph 356 of the tariff act of 1913, which reads as follows:

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, 60 per centum ad valorem; rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard; and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and

[1] T. D. 40230.

dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 60 per centum ad valorem. Stampings, galleries, mesh and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, 50 per centum ad valorem.

In the protest filed by the importer it was claimed that the merchandise was dutiable at 20 per cent ad valorem under paragraph 167 of the tariff act of 1913, which reads as follows:

167. Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

The Board of General Appraisers held that—

the merchandise in question consists of so-called ball chain chiefly used as pull chain for electric lights, but also suitable for use in the manufacture of jewelry, and shown by the testimony to be used for that purpose, * * *—

and accordingly overruled the protest.

It is contended by the importer that the merchandise is not suitable for use in the manufacture of jewelry in the condition in which it was imported; that the merchandise is not ejusdem generis with the articles named in the last sentence of paragraph 356, supra, and, that unless the doctrine of ejusdem generis is applied in the construction of the language contained in the sentence referred to, it would follow that every piece of metal, regardless of its condition at the time of importation, would be assessable thereunder, and, that the language, "stampings, galleries, mesh and other materials of metal," should be read, "stampings, galleries, mesh and *like* materials of metal."

It is further contended that the provision for other materials of metal is qualified by the clause, "whether or not set with glass or paste;" that, materials of metal in order to be classifiable under this paragraph must be susceptible of being set with glass or paste, and, that the merchandise involved in this case is not such as is included within the qualifying clause; that, the provision for "other materials of metal" is further qualified by the clause, "separate or in strips or sheets," and as the merchandise under consideration was imported in hanks 25 meters in length, it can not be considered as being within the latter qualifying provision.

It is further argued that paragraph 356, supra, expressly provides for chain of the same character as the brass chain under considera-

tion, when valued at more than 30 cents per yard, and that all chain of a less value is excluded therefrom.

The Government contends that the evidence in the case fully supports the finding of the collector and the decision of the Board of General Appraisers; and that the merchandise is suitable for use and is actually used in the manufacture of jewelry in the condition in which it is imported. It is argued by the Government that there are no words of qualification in the last sentence of paragraph 356, supra, applicable to the merchandise in this case, and that the words contained in said paragraph, "other materials of metal," and "suitable for use in the manufacture of any of the foregoing articles in this paragraph," apply to all of the articles enumerated in the paragraph, including the word jewelry.

We think that the doctrine of ejusdem generis is not applicable to the case under consideration, and that the language employed in the last sentence of paragraph 356 to express the legislative intent is such as to require no ingenious reasoning in order to reach the conclusion that the provision "other materials of metal" does not refer to the articles mentioned only in the last sentence of the paragraph, but that it applies to any of the articles enumerated in the paragraph, provided only that such merchandise comes within such qualifications as are provided therein.

The case cited by the importer, G. A. 8570, is not applicable to the case now under consideration for the reasons stated.

The next question presented by the importer for consideration is whether the clause "whether or not set with glass or paste" qualifies the provision "other materials of metal," so as to require that articles composed of "other materials of metal" be susceptible of being set with glass or paste in order that such articles may come within the provisions "other materials of metal suitable for use in the manufacture of any of the foregoing articles in the paragraph."

The importer relies upon the case of United States *v.* Downing (201 U. S. 354; T. D. 27281) as authority for his contention. In that case the Supreme Court had under consideration a provision of the tariff act of 1897 which provided for a certain rate of duty for articles not decorated in any manner and a different rate of duty for articles decorated. The Supreme Court held that the paragraph under consideration covered only articles susceptible of decoration and approved the decision in the case of Dingelstedt *v.* United States (91 Fed. 112), in which case a similar provision contained in the tariff act of 1894 was construed by the court to cover only articles susceptible of decoration.

For convenience, the question of whether the provision "other materials of metal" is qualified by the clause "separate or in strips or sheets" may be considered in connection with the question of the

construction of the clause "whether or not set with glass or paste," as the importer relies upon the principle announced in the case of United States v. Downing, supra, as authority for the argument that the clause "separate or in strips or sheets" is one of qualification and restriction. We are of the opinion that the clauses, "whether or not set with glass or paste," and "separate or in strips or sheets," when considered in connection with the whole paragraph, are not clauses of qualification and restriction but were intended by Congress to broaden the scope of the paragraph so as to include any material of metal even though it was set with glass or paste, or was imported separate or in strips or sheets, provided it was suitable for use, in the condition in which imported, in the manufacture of any of the articles enumerated in the paragraph. They are clauses of extension and amplification rather than of qualification and restriction. In the paragraph considered by the Supreme Court in the case of United States v. Downing, supra, a certain rate of duty was provided for articles and wares not decorated in any manner, and a higher rate of duty provided for articles and wares, "if decorated." The words "if decorated" would indicate the legislative intent to include within the paragraph only such articles and wares as were susceptible of decoration, and when considered in connection with the provision therein of two rates of duty depending upon whether the articles and wares were or were not decorated, the conclusion reached by the court is readily understood.

In the case of French Import Co. et al. v. United States (7 Ct. Cust. Appls. 460; T. D. 37048), this court in construing paragraph 356, supra, held that the words, "separate or in strips or sheets," were not words of limitation and restriction, but were words of amplification—

to make certain that whether imported in the form of strips or sheets, or as separate entities cut therefrom, stampings, galleries, mesh, and other materials of metal capable of such forms, should not escape the duty prescribed by that provision.

We are unable to agree with the importer that chain of the character of the merchandise involved in this case is expressly provided for in paragraph 356 by the provision—

and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard.

We have the samples of the merchandise before us as well as the description thereof by the importer, and from its appearance and the testimony descriptive of it, we think that it does not come within the meaning of the words "fancy patterns of chain," and therefore could not properly be classed and assessed as such.

We come now to the consideration of the question presented by the importer as to whether the merchandise is suitable for use in the condition in which imported, in the manufacture of jewelry. That the merchandise must be suitable for use in the manufacture of jewelry

in the condition in which imported, in order to be assessable under paragraph 356, supra, was held by this court in the case of United States *v.* Lorsch & Co. (8 Ct. Cust Appls. 109; T. D. 37222), in which case it was said:

> Of course these words do not imply every possibility of remotely ultimate use of crude materials. They imply a commercial suitabilty or fitness in the condition imported.

It was also held in that case that the word "use" in the last sentence of paragraph 356, supra, was "limited or qualified to susceptibility for the use therein expressed;" that the term "suitable" means "actually, practically, and commercially fit," and that—

> "actually," or "practically," or "commercially," or "commonly" fit for or used as, in no sense imply or require chief use. (P. 111.)

The court further said:

> Though, of course, as said by this court in French Import Co. et al. *v.* United States (7 Ct. Cust. Appls. 460; T. D. 37048), chief use necessarily implies a common and, therefore, a suitability of use.

The claim of the importer that the chain is not suitable for use in the condition in which imported is stated on page 2 of the importer's brief in the following language:

> The importer frankly admits that this chain can be cut into proper lengths and then used in the manufacture of jewelry, but denies, and the fact is not disputed, that it can be so used in its imported condition.

And on page 6 of his brief the following statement is made:

> As a matter of fact, as imported, the articles are suitable for no purpose except to be cut up.    *    *    *    That the chain is to an extent used as material in the manufacture of jewelry after being cut to lengths can not be and is not denied.
> *    *    *

This court in the case of French Import Co. *v.* United States, supra, held that the fact that chain, similar, to this to the extent, at least, that it was imported in long lengths, had to be cut into desired lengths in the process of converting it into articles of jewelry, did not controvert the fact that it was chiefly used in the manufacture of jewelry. And as the record in that case established that the chain was chiefly used in the manufacture of jewelry, it followed that it was a material suitable for that use.

We think that the evidence in this case justifies the conclusion that the merchandise in question is chiefly used by jewelry manufacturers in the manufacture of jewelry. It is true that the importer testified that he sold it mostly to electrical line socket manufacturers, but that testimony is not sufficient to establish that the merchandise generally is chiefly used in the manufacture of such articles as are produced by such manufacturers. It seems to us that the most that can be said of that testimony is that this particular importer sold the major portion

of whatever amount of this merchandise he imported to electrical line socket manufacturers.

. It appears from the record that the witness Egbert B. Shepard, who is undoubtedly qualified to speak authoritatively on the subject, testified squarely that this merchandise is and has been for years chiefly used in the manufacture of jewelry.   We quote from his testimony as found on pages 13 and 14 of the record:

Q. Now, you have sold these chains, I understand you to say, about 30 years? During that time where have you chiefly sold them?—A. To jewelry concerns chiefly.

Q. During all of these 30 years?—A. Yes, sir.

Q. Are you familiar with the chief use of these chains?—A. I am.

Q. Would you state that there were more used during the past 30 years for the manufacture of jewelry than for sockets and electrical matters?—A. I would.

Q. You think that is a fact?—A. I do, because they came into use in sockets only, maybe, 15 years ago.

Q. Let's take the last 15 years.   Let's go back to the time of the passage of the act of 1913.   What would you say as to the chief use in 1913, that is, nine years ago?—A. Well, if I include right up to the present time, I think that the largest percentage has been in jewelry.

It seems to us, in the absence of any proper testimony to the contrary, that the question of chief use of the merchandise under consideration is clearly established to be in the manufacture of jewelry. Accordingly the doctrine that—

chief use necessarily implies a common and therefore a suitability of use—

is applicable to this case and is decisive thereof.

The judgment of the Board of General Appraisers is *affirmed.*