UNITED STATES *v.* BERNARD, JUDAE & Co. (No. 3006)[1]

---

[1] T. D. 42593.

United States Court of Customs Appeals, January 30, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.

[Oral argument December 8, 1927, by Mr. Lawrence and Mr. Tompkins]

Before SMITH, BARBER, BLAND, and HATFIELD, Associate Judges; GRAHAM, Presiding Judge, participating in the decision by agreement of counsel

BARBER, Judge, delivered the opinion of the court:

This appeal from the United States Customs Court involves the proper classification of certain brass-ball chains. They were classified and assessed by the collector as materials of metal, suitable for use in the manufacture of jewelry, at 75 per centum ad valorem under the last part of paragraph 1428 of the Tariff Act of 1922 providing for—

Stampings, galleries, mesh, and other materials of metal, * * * suitable for use in the manufacture of any of the foregoing articles in this paragraph, 75 per centum ad valorem.

Importer protested, claiming the merchandise to be dutiable at 40 per cent ad valorem under paragraph 399 of the act, which provides for—

Articles or wares not specially provided for, * * * if composed wholly or in chief value of * * * brass, * * * but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

Other claims, unnecessary to mention, were made in the protest. The United States Customs Court adjudged the merchandise to be dutiable under the quoted part of paragraph 399.

At the hearing before it a representative sample of the importation was introduced in evidence, and also the appraiser's answer to the protest, denominated in the record "the appraiser's return," which was in effect that he returned the merchandise as materials of metal suitable for use in the manufacture of jewelry under the quoted part of said paragraph 1428. The only additional evidence was the testimony of a witness on behalf of importer, who testified that these chains were "used for electric sockets"; that so far as he knew they were put to no other use; that to his knowledge he had never seen them used for jewelry purposes; that he was not in the jewelry business; that they were sold to electric-light fixture houses; that they were mostly of brass; and that there was "about them" no gold, silver, platinum, or any precious metal or any precious or semi-precious stones of any kind.

There is no brief on the part of the importer.

The Government appealing contends, in substance, that the judgment below should be reversed on the ground that there is no evidence in the record showing that the importation was not suitable for use in the manufacture of jewelry.

We think this contention must be upheld. The classification of the collector implies that he found these brass-ball chains to be suitable for use in the manufacture of jewelry. The answer of the appraiser has no tendency to show the collector erred, but rather supports his action, and we can not say that the representative sample tends to refute or rebut it. There is, therefore, nothing which can be thought to impeach the collector's classification other than the testimony of importer's witness. He was not a jeweler, and it does not appear that he knew anything about the jewelry business. He testified that so far as he knew these chains are "used for electric sockets"; that he did not know of any use thereof for jewelry purposes; and that they were sold to electric-light fixture houses. All this may be assumed to be true, and yet it does not prove that they are not actually suitable for use in the manufacture of jewelry.

The part of paragraph 1428 now under consideration is a reenactment in identical language of paragraph 356 of the tariff act of 1913.

In *United States* v. *Lorsch & Co.*, 8 Ct. Cust. Appls. 109, T. D. 37222, the meaning of the term "suitable for use in the manufacture of any of the foregoing articles" was definitely considered, and it was held, in substance, that the expression "suitable for use" did not mean chief use, but that it implied a commercial suitability or fitness for the use in question. The collector's classification in this case implies that he found these brass-ball chains to be suitable for use within the meaning of the quoted part of paragraph 1428 as defined in the *Lorsch* case, and there is no evidence in the record here which impeaches that finding.

In this connection reference may be had to *Durbrow & Hearne* v. *United States*, 12 Ct. Cust. Appls. 225, T. D. 40230.

Counsel for importer, however, in oral argument makes the point that the testimony of its witness so far overcomes the presumed correctness of the collector's classification that it was incumbent upon the Government, in order to sustain the same, to introduce evidence in support thereof, citing as authority *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31130.

An examination of the opinion in that case does not sustain the contention. Birch-tar oil had been classified under a provision for—

Alkalies, alkaloids, distilled oils, essential oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts.

It was claimed by importers to be dutiable under a provision for grease and oils—

such as are commonly used in soap making or in wire drawing, or for stuffing or dressing leather, and which are fit only for such uses.

At the trial of the protest before the board a witness for importers testified that he had charge of all the purchases and sales of the oil in question for them; that he had been so employed some 10 or 12 years, during which time the same kind of oil had been one of the articles of merchandise which they had imported; that during such period he had personally engaged in the sale thereof at wholesale; that it was sold by them to jobbers in tanning materials and tanners of leather exclusively; that he had never known it to be sold in the markets of the country to anybody else; that he knew it was used for dressing leather to give it an odor of Russia leather; that he knew of no other use to which it was susceptible; that his knowledge of it was based wholly on his 10 or 12 years' experience in handling and purchasing it for importers; that he knew from his personal experience that tanners could use the oil for no other purpose than that of giving to leather the odor of Russia leather; that he never heard of its being used as a drug, or that it was one of the drugs mentioned in the Pharmacopœia; and that in his opinion it could not be used as a drug, its odor was too strong.

We held that this testimony, in connection with the special report of the appraiser that the oil in question was used in the manufacture of russia leather, and of the chemist that it was a wood-tar oil—

was sufficient at least to throw the burden on the Government of showing that it was not used as a dressing for leather or that that was not its only use.

It will be observed that the witness in the *Klipstein* case had 10 or 12 years' experience in handling the commodity and that from his personal experience he knew that it was used for dressing leather, and knew of no other use to which it was susceptible, and that he had never known it to be sold in the markets of the country to anyone except jobbers in tanning materials and tanners of leather.

In the case at bar the testimony of importer's witness does not show that he possesses the experience or knowledge concerning brass-ball chains and their uses that was possessed by the witness in the Klipstein case as to birch-tar oil. Such knowledge can not be implied from the fact that he was secretary and vice president, as he testified, of the importing company. He does not state how long he had been in its employ or one of its officers, nor does he state that he ever bought or sold these chains. Almost any person, actually cognizant of the existence of brass-ball chains, might have given substantially the same testimony as was given by this witness. The implication of the *Klipstein* opinion is clearly that testimony of the kind there

relied upon must at least be given by a witness or witnesses who are more familiar with the character and use of the importation than was importer's witness here. In addition to this, his testimony is in no-wise supported by the appraiser's report as in the *Klipstein* case, but such report, so far as it has any probative force, tends to contradict his testimony.

We find nothing in the *Klipstein* case that justifies importer's claim for it.

The judgment of the United States Customs Court is *reversed.*

BLAND, J., dissents.