LARKIN CO. *v.* UNITED STATES (No. 781).[1]

1. RAPESEED OR COLZA OIL.

The contention was made that the importation is not rapeseed oil as assessed, but is a sulphur colza oil, commonly used for soap making. The testimony falls short of maintaining this.

2. REMANDING FOR NEW TRIAL.

A party litigant in an appellate tribunal must stand upon the case as he made it in the lower court; and a case here will not be remanded because the record discloses simply a failure to make proof.—Stegeman *v.* United States (1 Ct. Cust. Appls., 208; T. D. 31240).

## United States Court of Customs Appeals, January 23, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26673 (T. D. 31883).

[Affirmed.]

*Frederick C. Slee* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in question in this case was assessed for duty under paragraph 37 of the tariff act of 1909 as rapeseed oil. The importer protested against this assessment, claiming free entry for the merchandise under paragraph 580, reading as follows:

Grease, fats, vegetable tallow, and oils (excepting fish oils), such as are commonly used in soap making or in wire drawing, or for stuffing or dressing leather, and which are fit only for such uses, and not specially provided for in this section.

It appears that the Government chemists reported this as crude rapeseed oil. The only testimony offered at the hearing was that of one witness produced by the importer, who was a chemist in the employ of the importer, and who testified that the merchandise in question was not properly designated as rapeseed or colza oil, but was known as a sulphur colza oil, produced as a by-product from the pressed cake from which the original rapeseed oil had been extracted, using for that purpose carbon bisulphide.

The importers also sought to show by this witness the facts essential to bring this oil under paragraph 580, above quoted, namely, that it is commonly used for soap making and is not fit for uses other than soap making or stuffing or dressing leather.

The witness showed no familiarity with the commercial classification of this oil. He testified that he never had had any experience with this sulphur colza oil until its importation in the present instance; that he knew of no purpose for which sulphur colza oil could be used except for soap making; that pure colza oil was used for lubricating

---

[1] Reported in T. D. 32231 (22 Treas. Dec., 182).

purposes and, as he believed, in the rubber industry.    He was asked
this question:

Q. If you have never had any experience with the sulphur colza oil until this impor-
tation, how can you tell what uses it can be put to?—A. I can tell by the burning.

Q. You can tell it is neither fit for burning nor lubricating?—A. Yes, sir; I stated
I did not know of any other purpose it is fit for.

Q. It may be fit for other purposes and you not know them?—A. Yes, sir.

It was incumbent upon the importers to bring the importation
within the section relied upon.    The Board of General Appraisers
found that this testimony was not sufficient to establish that this oil
was fit for no other use than soap making.    We agree with the Board
of General Appraisers that this testimony fell far short of making out
the protestant's case.

The case is quite unlike that of Klipstein v. United States (1 Ct.
Cust. Appls., 122; T. D. 31120), as in that case the testimony of a
dealer in the oil in question, shown to be familiar with the uses for
which the product was sold, was given.    The record in the present
case is entirely silent as to what the commercial use of the oil in
question is.    An employee of the importer, who had no acquaintance
with the oil itself except that derived from the present importation,
proceeded, upon a chemical analysis, to express an opinion that it is
suitable for soap making and is not suitable for lubricating purposes
or as an illuminant.    But whether it is suitable for any other pur-
pose does not appear.    For aught that the record discloses it might
be used commonly and commercially for other purposes than those
named in the paragraph relied upon.

It is urged by counsel for the appellant that, in case the court
should be of the opinion that there was a failure on the part of the
protestant to establish the case by a preponderance of evidence, the
case should be remanded for a new trial.    No such power is given
to this court by the organic act.    In Stegeman v. United States (1
Ct. Cust. Appls., 208; T. D. 31240) we had occasion to consider this
question.    It is said of the power given to remand a case for further
proceedings by the Board of General Appraisers:

This authority is coupled with the authority to affirm, modify, or reverse, and this
is the authority to affirm, modify, or reverse the decision by the Board of General
Appraisers upon the case as made before them, and undoubtedly on such a hearing,
if it should appear that the board has erroneously excluded testimony or committed
any other error of law the correction of which would involve of necessity a new trial
of the case, the power to remand for this purpose would exist as it does in all cases in
appellate courts, reviewing a case on writ of error.

It seems obvious that the intent of this act was to confer upon this court appellate
jurisdiction only, and that that appellate jurisdiction partakes of the nature of an
appeal in equity, and authorizes a determination of questions of fact involved.
* * * But such an appeal does not involve a trial de novo, but a determination
of the case upon the record made up by the Board of General Appraisers. * * *

The manifest purpose of the act of August 5, 1909, was to pro-
vide for a speedy determination of all cases of protest.    It does not
contemplate that a party may present his case piecemeal, and this

was so determined in Stegeman *v.* United States. As we held in that case, it is within the power of Congress to place such limitations upon the judicial power of a court, dealing with customs-revenue cases, as it may see fit from time to time to fix. That limitation does not admit of our granting a new trial in a case where it simply appears that there has been a failure of proof. . It is possible that this practice may result in injustice in some cases, but evidently it was the deliberate judgment of Congress that such occasional inconvenience or apparent injustice might better be borne than that delay and uncertainty should be permitted. Indeed, it is not the exception in judicial proceedings, but the rule, that a party litigant must in an appellate tribunal stand upon the case as he has made it in the lower court. That a case may be at times imperfectly presented necessarily follows, and that the appellate court is without the power of relief in such cases also follows.

The decision of the Board of General Appraisers is *affirmed.*