CHANEY MANUFACTURING CO. ET AL. *v.* UNITED STATES (No. 3693)[1]

United States Court of Customs and Patent Appeals, January 29, 1934

*J. Stuart Tompkins* for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*William F. Futrell* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument December 12, 1933, by Mr. Tompkins and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling certain protests of appellants against the classification by the collector of certain tubing made of drawn glass, imported at the port of New York, under the provisions of paragraph 218 of the Tariff Act of 1922, at the rate of 65 per centum ad valorem; said protests made alternative claims that the merchandise was dutiable under the provisions of paragraph 230 of said act at the rate of 50 per centum ad valorem, or under the fourth provision of said paragraph 218 at the rate of 55 per centum ad valorem.

[1] T. D. 46929.

The provisions of said paragraphs, so far as they are here pertinent, read as follows:

PAR. 218. Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing and rods, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste, or a combination of glass and paste, 65 per centum ad valorem * * *.

PAR. 230. * * * all glass or manufactures of glass or paste, or of which glass or paste is the component material of chief value, not specially provided for, 50 per centum ad valorem.

PAR. 218. * * * all articles of every description not specially provided for, composed wholly or in chief value of glass * * * blown, * * * or colored, cut, engraved, etched, frosted, gilded, ground, * * * 55 per centum ad valorem * * *.

Before the trial court two witnesses testified on behalf of appellants. No testimony was introduced by the Government, but a stipulation was entered into that the glass of which said tubing was made is "drawn," as distinguished from "blown" glass.

It appears from the testimony that the Chaney Manufacturing Co. was the importer of all of the merchandise here involved, and said appellant company will be hereinafter referred to as the "importer."

The testimony shows that the importer is a manufacturer of thermometers, and has no other business; that it imported the tubing here involved for use in such manufacture; that said tubing was imported in lengths of approximately 60 inches, not sealed at either end, and in three diameters, represented by Exhibits 1, 2, and 3, introduced in evidence by appellants; that the smallest size tubing is used exclusively by the importer as material for making cheap advertising thermometers; that the size represented by Exhibit 2 is also used by it for making advertising thermometers; that the tubing represented by Exhibit 3 is used by it for making advertising thermometers and cheap "red spirit" house or store thermometers; that the imported tubing as a whole is used by importer chiefly for making advertising thermometers. The only fluid or liquid used in any of said tubing, when used in thermometers, is a red spirit composed chiefly of creosote, and the testimony shows that the tubing is not designed to hold mercury because the bore is too large to permit such use in a practical way.

The two witnesses who testified were connected with the importer. The witness Herold was secretary of said appellant company, and the witness Weksler was a thermometer maker in the employ of said company. Before such employment he had been employed by other thermometer companies.

We think the evidence establishes that tubing of the class here in question is not used in making chemical or clinical thermometers, such as are commonly used in hospitals, laboratories, etc., and that

the chief use, and practically the only use of *thermometers* in which such tubing is used is for advertising and household purposes, the tubing, when filled with liquid as aforesaid, registering the temperature fairly accurately, within one or two degrees.

However, the classification of the collector carries with it the presumption that tubing of the class of that in question is scientific tubing within the meaning of those words in said paragraph 218, as interpreted by this court in the cases of *United States* v. *Chesterton Co. et al.*, 15 Ct. Cust. Appls. 175, T.D. 42232, and *United States* v. *Schaeffer & Budenburg Corp.*, 18 C.C.P.A. (Customs) 338, T.D. 44587.

In the case of *United States* v. *Schaeffer & Budenburg, supra*, this court said:

The language of this provision is "scientific * * * tubing and rods." It is not disputed that thermometers are scientific instruments. This tubing must be considered as to its condition when it entered our customs jurisdiction. It was then glass tubing, intended for and dedicated to, a scientific use. The mere fact that it was afterward combined with other materials to make it capable of its scientific purpose, does not, in our opinion, make it any the less scientific tubing. * * *

It should be stated that it was shown that the tubing involved in said last cited case was chiefly used in the making of thermometers, which thermometers were used in hospitals, laboratories, etc.

While the trial court, in the case at bar, expressly held that a household thermometer is a scientific instrument, and that therefore such tubing as is here involved is scientific tubing specially provided for in said paragraph 218, we do not find it necessary here to pass upon that question for we find nothing in the record from which it can be found that tubing of the character here involved is not chiefly used for scientific purposes other than in the making of thermometers. The presumption attending the classification of the collector is that tubing of the class of that here involved was chiefly used for scientific purposes.

In *United States* v. *Schaeffer & Budenburg Corp., supra*, this court further said:

* * * It is a matter of common knowledge that glass tubing, of various lengths and sizes, is used in scientific work in connection with rubber tubing and other appliances, to make scientific instruments and to perform scientific experiments. The fact that such tubing cannot be so used by itself does not render it any the less scientific tubing. The test is its chief use. The purpose of this paragraph, in our opinion, was to include all such tubing.

It was therefore not enough for appellants to establish that the tubing here in question was not used or suitable for use in the making of chemical or laboratory thermometers, assuming, without deciding, that a household thermometer is not a scientific instrument. In order to make a *prima facie* case overcoming the presumption attending the classification by the collector, it was incum-

bent upon appellants to show that tubing of the class to which the imported tubing belongs was not chiefly used for scientific purposes. This, in our judgment, they failed to do.

The witness Herold testified only to the use in thermometers of tubing like that in question. He did not testify that it had no other use, nor was he shown to be qualified to testify that it was not chiefly used for other purposes. Neither he nor the importer, of which company he was secretary, dealt in this tubing generally or for any other purpose than in the manufacture of thermometers. There is nothing in the testimony of this witness to indicate that the tubing in question might not have many scientific uses, other than in the manufacture of thermometers.

A like observation is applicable to the testimony of the witness Weksler, a thermometer maker in the employ of importer, as aforesaid. There is only one statement made by this witness that could, by any possibility, be held to establish *prima facie* that the tubing in question was chiefly used in the manufacture of thermometers. That statement is as follows:

Q. Are you familiar with, and do you know personally about the kind of glass used in the thermometers made out of the imported tubing like Exhibits 1, 2 and 3 in this case?—A. I have only seen them used for that one purpose.

Had the quoted testimony been given by one who dealt in glass tubing and was familiar with all the uses which it might have, the question would be presented as to whether such testimony was sufficient to overcome the presumption attending the collector's classification that the tubing in question was chiefly used for scientific purposes, assuming that household and advertising thermometers are not scientific instruments; but the witness was a thermometer maker, and there is nothing in his testimony to indicate that if such tubing was chiefly used for purposes other than the making of thermometers he would have had any knowledge of it. We therefore cannot regard his statement that he had never seen tubing of this character used for any purpose other than the making of thermometers as evidence that it was not chiefly used for other purposes of a scientific character. *Larkin Co.* v. *United States*, 2 Ct. Cust. Appls. 483, T.D. 32331.

As indicated above, we are not to be understood as expressing any opinion as to whether thermometers of the character described in the testimony in the case at bar are scientific instruments.

It follows from the foregoing that it is our opinion that appellants failed to introduce evidence making a *prima facie* case overcoming the presumption of the correctness of the classification made by the collector, and for that reason the judgment of the United States Customs Court is *affirmed*.