## KLIPSTEIN v. UNITED STATES (No. 309).[1]

BIRCH-TAR OIL DISTILLED FROM WOOD.

It appearing from the evidence that the article imported was birch-tar oil distilled from the wood and used in dressing russia leather, to give an odor to the leather, the mere possible but undisclosed use of this oil for other purposes did not remove it from the operation of paragraph 568, tariff act, 1897, and it was nondutiable under that paragraph.

United States Court of Customs Appeals, November 30, 1910.

APPEAL from a decision of the Board of United States General Appraisers (T. D. 30667).

[Reversed.]

*Brown & Gerry* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

The appellants in this case imported at the port of New York certain merchandise which was invoiced as "oil of birch" and returned by the appraiser in a special report as "birch-tar oil distilled from the wood and used in the manufacture of russia leather." The merchandise was assessed by the collector at 25 per cent ad valorem under paragraph 3 of the tariff act of 1897, which paragraph reads as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts not specially provided for in this act, twenty-five per centum ad valorem.

The importer in due form and at the proper time protested against the classification and assessment made by the collector and claimed,

─────────────────────

[1] Reported in T. D. 31120 (19 Treas. Dec., 1260).

among other things, that the merchandise was duty free under paragraph 568 of said tariff act, which paragraph reads as follows:

568. Grease, and oils (excepting fish oils), such as are commonly used in soap making or in wire drawing, or for stuffing or dressing leather, and which are fit only for such uses, and not specially provided for in this act..

The Board of General Appraisers sustained the collector, and from its decision the importers took the appeal which is now the subject of consideration.

On the hearing before the board, Edward R. Morawetz testified on behalf of the importers that he was assistant purchasing agent and salesman for the firm of A. Klipstein & Co.; that as such he has had charge of all purchases and sales of birch-tar oil for the firm; that he has been with Klipstein & Co. some 10 or 12 years, and that during all that time birch-tar oil has been one of the articles of merchandise imported by the firm; that during said period of 10 or 12 years he has personally engaged in the sale of this merchandise at wholesale; that the merchandise is imported in small quantities; that it is sold by his firm to jobbers in tanning materials and tanners of leather exclusively; that he has never known it to be sold in the markets of the country to anybody else; that he knows that it is used for dressing leather to give it an odor of russia leather; that he knows of no other use to which it is susceptible; that he knows nothing as to the origin of the oil or method of producing it; that he has no knowledge of it other than that afforded by his 10 or 12 years' experience in handling it as purchasing and sales agent of the importers; that he knows from his personal experience that tanners can use the oil for no other purpose than that of giving to leather the odor of russia leather; that he never heard of its being used as a drug or that it is one of the drugs mentioned in the Pharmacopœia; and that in his opinion it could not be used as a drug because the odor is too strong. The testimony of this witness, the special report of the appraiser to the effect that the importation is "birch-tar oil, distilled from the wood and used in the manufacture of russia leather," and the chemist's report, stating that the "material is wood-tar oil, obtained by the destructive distillation of wood, probably birch wood," constitutes all the evidence submitted to the board. The board held that the report of the appraiser was substantially confirmed by that of the official chemist, and that the evidence of the only witness produced on the part of the importers was not sufficient to establish that birch-tar oil was *commonly used in stuffing or dressing leather or that it was fit only for such use.*

The only question in this case is, was there sufficient evidence before the board to establish at least *prima facie* that birch tar oil is used as a dressing for leather and for no other purpose. The decision of this question depends upon the weight and value which should be given to

the testimony of one unimpeached witness when considered in connection with the chemist's report and the special report of the appraiser. We think that the testimony was sufficient at least to throw the burden on the Government of showing that it was not used as a dressing for leather or that that was not its only use. Had the report of the appraiser or that of the chemist been to the effect that the importation was used for some other purpose than the stuffing or dressing of leather there might have been some force in the claim that the presumption which obtains in favor of such reports and the classification of the collector had not been overcome by a preponderance of evidence. That was not this case, however. Indeed, if anything, the report of the appraiser is corroborative rather than contradictory of the testimony of the witness. That testimony was, it is true, negative in character as to whether the oil might not be put to some other use than that of dressing leather, but it was direct, affirmative, and positive, first, that it was used for dressing leather in order to give it the distinctive odor of russia leather; second, that in all his years of experience with the oil the witness knew of no other use for it; and, third, that it was imported by his firm to be sold and was sold exclusively to tanners and jobbers in tanning materials. The mere fact that the merchandise might *possibly* have some other use than that specified is not sufficient of and by itself to overcome or counterbalance the probative effect of the sworn declaration of a single witness of ten years' experience with the goods that they have but one use because he knows of but one use for them. United States *v.* Wells (77 Fed. Rep., 411). Especially must this be true when the official report of the appraiser mentions but one use for the importation and that use the one testified to by the witness as the sole use of which he is aware. Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. Of course the importers in this case might have produced other importers of the oil, tanners, jobbers in tanning materials, and the sworn declarations of the manufacturers of the merchandise to corroborate the testimony of their purchasing and sales agent, but apart from its corroborative effect such testimony could have had no higher probative value than that of the single witness produced. After all is said and done, a thousand witnesses, assuming that they were favorable to the importer, could have testified to nothing more than that birch-bark oil was used as a dressing to give the characteristic odor to russia leather, and that so far as they were concerned they *knew* of no other use for it. If the testimony of the importers' witness had been contradicted or impeached in any way, the evidence of additional witnesses would have been very

valuable, not to say necessary, but in the absence of such impeachment or contradiction the sworn declaration of one was as effective as that of a number. The cases of Swan *v.* Finch (113 Fed. Rep., 243) and Train *v.* United States (113 Fed. Rep., 1020), cited by the Government, are not in point. In Swan *v.* Finch it was affirmatively shown that the oil had other uses than that of dressing leather, among others that of making blacking. Moreover, the oil in that case was a fish oil, and the importers failed to sustain their contention that it had a commercial designation which took it out of that category. In the case of Train *v.* United States, gunny cloth or cotton bagging was claimed free of duty because it was fit only to be converted into paper. It appeared, however, that gunny cloth and cotton bagging of the character claimed to be free of duty had other uses than that of conversion into paper, among them the making of mattresses, sweat pads for horses, lining for cheap coats, plumbers' oakum, and the making or repairing of coverings for cotton.

Scientific works on leather making seem to confirm the contention of the appellants that the oil is used to give the characteristic odor to russia leather, and dictionaries and encyclopedias which mention the oil give that as its use and *mention no other*. The Principles of Leather Manufacture, a scientific work on leather making by Proctor, has this to say at page 250 of birch bark and of birch tar oil.

By far the most important use of birch bark in tanning is to produce the birch-bark tar used to give scent and insect-resisting power to "Russia" leather ( *Youft;* Ger. *Juchten*). The outside bark consists of thin layers of cork, often white, with a crystalline deposit of betulin, which, when distilled, yields the odorous oil. The distillation is a dry one, and tarry products accompany the true oil, and at first give a strong empyreumatic smell to the leather, which it loses by keeping, while the true "Russia" odor remains.

Sadtler's Organic Chemistry (p. 334), speaking of russia leather, says:

This variety is peculiar in its characteristic odor and ability to withstand dampness without any tendency to mould, both of which qualities it owes to the currying with the empyreumatic oil of birch bark. * * * The birch-bark oil is rubbed into the flesh side of the tanned skins with cloths, care being taken not to apply so much as to cause it to pass through and stain the grain side of the leather.

The Standard Dictionary, referring to the birch tree, says of the European or white birch (*Betula alba*):

It is put to many uses, especially in Russia, where its oil is used in dressing russia leather.

The New English Dictionary (Murray) describes birch oil as—

An oil extracted from the bark of the birch and used in the preparation of russia leather, to which it gives its smell.

The New International Encyclopedia says:

*Russia leather* is much valued for its aromatic odor which it derives from the peculiar oil of the birch bark used in tanning it. The fact that this odor repels moths and other insects renders this leather particularly valuable for binding books; a few books bound in russia leather being effective safeguards against insect enemies in a library.

It was hinted by a question during the hearing that birch-bark oil might be used as a drug. The Pharmacopœia of the United States, which has been given by the pure food and drugs act an official status for the strength, quality, and purity of drugs, does not mention birch-bark oil as a drug or as an element of any medicinal preparation. It does contain, however, oil of *sweet* birch (*Betula lenta*), which is essentially the same as the oil of wintergreen and which is often erroneously spoken of as the source of "russia" oil, which is a distillation from the bark of the *white* birch (*Betula alba*).

The United States Dispensatory states that birch-bark oil, which appears to be identical with the importation, is used as a lotion for eczema and other skin diseases. In view of the fact, however, that the birch-bark oil used to give the odor to russia leather appears to be often confounded with the oil distilled from the *Betula lenta* or sweet birch (see Principles of Leather Making, Proctor, p. 250), and in view of the fact that the preparation set out in the Dispensatory is not included in the Official Pharmacopœia, and in view of the further fact that the Dispensatory itself says that many substances have been included in it which are not recognized as official by the Pharmacopœias, and solely because they may have some "lingering remains of a former reputation," it can hardly be assumed that this is a practical use of the oil. Possibly there is that use of it, however, but if so it should have been shown by the Government by competent evidence.

The decision of the Board of General Appraisers is *reversed*.