(C. D. 1423)

IGNAZ STRAUSS & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 27, 1952)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: These are protests, consolidated at the trial, against the the collector's assessment of duty on various articles of merchandise under paragraph 1552 of the Tariff Act of 1930 as smokers' articles. All of the items were assessed at 60 per centum ad valorem, except those covered by protest No. 162388–K, which were also assessed as smokers' articles but at 30 per centum ad valorem under paragraph 1552, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. It is claimed that the articles are dutiable as household utensils at different rates, depending upon the material of which they are composed, under paragraph 339 of the Tariff Act of 1930, under paragraph 339, as modified by the trade agreement with the United Kingdom, T. D. 49753, or under paragraph 339, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and Presidential proclamation, T. D. 51909; or as articles composed in chief value of metals at different rates, depending upon the material of which they are composed, under paragraph 397 of the Tariff Act of 1930, under paragraph 397, as modified by the trade agreement with the United Kingdom, T. D. 49753, or under paragraph 397, as modified by the General Agreement on Tariffs and Trade, T. D. 51802; or as manufactures of soapstone under paragraph 209 of the Tariff Act of 1930.

The pertinent provisions of the involved statutes are as follows:

PAR. 209. * * * manufactures (except toilet preparations), of which talc, steatite or soapstone, or French chalk is the component material of chief value, wholly or partly finished, and not specially provided for, if not decorated, 35 per centum ad valorem; if decorated, 45 per centum ad valorem.

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; * * *.

PAR. 339 [as modified by the trade agreement with the United Kingdom, T. D. 49753]. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for:

Plated with silver on nickel silver or copper------------------ 35% ad val.
Composed wholly or in chief value of copper (including copper in alloys other than brass), not plated with platinum, gold, or silver, and not specially provided for------------------------------------- 35% ad val.
Composed wholly or in chief value of pewter, not plated with platinum, gold, or silver, and not specially provided for--------------- 25% ad val.

PAR. 339 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for * * *:

    *        *        *        *        *        *        *

Not plated with platinum, gold, or silver, and not specially provided for:

    *        *        *        *        *        *        *

Other:

    *        *        *        *        *        *        *

Composed wholly or in chief value of iron, steel, copper, or antimony
20% ad val.

PAR. 339 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and Presidential proclamation, T. D. 51909]. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for * * *:

\*    \*    \*    \*    \*    \*    \*

Not plated with platinum, gold, or silver, and not specially provided for:

\*    \*    \*    \*    \*    \*    \*

Other:

    Composed wholly or in chief value of brass_____ 15% ad val.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

PAR. 397 [as modified by the trade agreement with the United Kingdom, T. D. 49753]. Articles or wares not specially provided for, if plated with silver on nickel silver or copper_____ 35% ad val.

PAR. 397 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. Articles or wares not specially provided for, whether partly or wholly manufactured:

\*    \*    \*    \*    \*    \*    \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*    \*    \*    \*    \*    \*    \*

    Other (except slide fasteners and parts thereof)_____ 22½% ad val.

PAR. 1552. Pipes and smokers' articles: * * * and all smokers' articles whatsoever, and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, earthenware, or stoneware, 60 per centum ad valorem; * * *.

PAR. 1552 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. All smokers' articles whatsoever * * * and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, eathenware, or stoneware:

\*    \*    \*    \*    \*    \*    \*

Other_____ 30% ad val.

The issue in the instant case is one of fact, as to the chief use of the articles involved, inasmuch as classification under either paragraph 339 as household utensils or under paragraph 1552 as smokers' articles depends upon chief use. *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T. D. 41231; *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297; *United States* v. *The Friedlaender Co.*, 21 C. C. P. A. (Customs) 103, T. D. 46445. The chief use at the time of the enactment of the Tariff Act of 1930 (June 17, 1930) is the controlling factor, since the provisions of both paragraph 339 and paragraph 1552 are *eo nomine* provisions designating use. *Wilbur-Ellis Co.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762; *United States* v.

*F. W. Myers & Co., Inc.*, 24 C. C. P. A. (Customs) 464, T. D. 48913;
*United States* v. *H. V. Albrecht*, 27 C. C. P. A. (Customs) 112, C. A. D. 71.

Plaintiff called two witnesses, Maurice Lemkin and Gustave Krakauer, who testified as to the use of the various articles involved herein. Mr. Lemkin stated that he had been associated with the plaintiff corporation for 28 years and was the sales and import manager. He had been familiar with the type of merchandise involved herein for 26 years and had sold it at wholesale. He had seen the merchandise involved in these protests and had examined the exhibits in *Ignaz Strauss & Co., Inc.* v. *United States*, 9 Cust. Ct. 342, C. D. 710, the record of which was incorporated herein. Mr. Krakauer stated that during the past 25 years he had been employed as a salesman for the Fan Co., an importer of Chinese and Japanese merchandise, had owned an interior decorating shop where he had sold gift items, and had been employed as a buyer in the gift department of a department store. Since 1925, he had bought articles like those involved herein and sold them to gift shops, department stores, and florists over the entire United States.

These witnesses were fully qualified to give an opinion as to the use of the articles involved herein. See *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120, where the court said (p. 124):

* * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. * * * [Italics quoted.]

The defendant called two witnesses, David Lenz and Bernard Shainin, who testified as to the use of exhibits 1 to 8 of the incorporated case. Mr. Lenz had been an importer of Chinese and oriental art objects since 1921, and Mr. Shainin had been importing Japanese, Chinese, and Indian merchandise for 30 years.

During the course of the trial, stipulations were entered into as to the composition of plaintiff's illustrative exhibits C, E-1, F, and G. Subsequent to the trial, the submission of the protests was set aside for the purpose of incorporating into the record a stipulation as to the composition of most of the additional articles involved herein.

From the record it appears that the articles fall into several different categories, which we will consider *seriatim*. The first includes the items listed on plaintiff's illustrative exhibit A, covering articles identical with exhibits 2, 3, 5, 6, and 8 in *Ignaz Strauss & Co., Inc.* v. *United States, supra*. Those articles are described in the decision in that case. It was held that they "were chiefly used, at the time of the enactment of the Tariff Act of 1930, as utensils for the comfort and convenience of persons in the homes, either on the table or in the rooms of the house, and that the chief use was not as smokers' articles."

Mr. Lemkin testified that the items on plaintiff's illustrative exhibit A were identical by number with the exhibits in the incorporated case. His company uses a specific number to identify a specific item, and he is familiar with copper, brass, and silver by observation. He had examined both the exhibits in the prior cases and the articles itemized on the list and found them identical in his observation.

On cross-examination, Mr. Lemkin stated that a cigarette could be placed in exhibit 3 of the incorporated case but it would not be in a safe condition after it had burned down. He had seen articles like exhibit 5 of the incorporated case used as pin trays, clip trays, and for holding buttons, and on some occasions as ash trays. He had seen articles like exhibit 6 of the incorporated case used as pin trays, clip trays, nut dishes, and ash trays. His observation of the use of articles like exhibit 7-A of the incorporated case was as ash trays on some occasions. As to articles like exhibit 8 of the incorporated case, the use in his experience was as nut or candy dishes.

Mr. Lenz testified that he had referred to articles like exhibits 1 to 8 of the incorporated case at times as ash trays; that he used articles like exhibits 2, 3, and 4 in his home as pin trays; and that he had seen articles like exhibits 1 to 7-A used on occasions as ash trays.

Mr. Shainin testified that he had seen articles like exhibits 1 to 8 of the incorporated case used as nut dishes, pin trays, fruit dishes, and ash trays. In his experience, exhibit 7-A is purely a decorative piece, and exhibit 8 is a nut dish. He had seen the others used as ash trays but not exclusively as such.

The additional evidence in the instant case as to exhibits 1 to 8 of the incorporated case does not change our views as to the proper classification of such articles. The composition of the items listed on plaintiff's illustrative exhibit A having been agreed to by stipulation, we hold them to be dutiable as follows: Item No. 8954 at 25 per centum ad valorem as a household utensil, wholly or in chief value of pewter, under paragraph 339 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, and the remaining items at 40 per centum ad valorem as household utensils, in chief value of copper or brass, under paragraph 339 of the Tariff Act of 1930.

The second category includes the items listed on plaintiff's collective illustrative exhibit B. The evidence establishes that these items were similar in all substantial respects to exhibits 1, 3, 5, 6, 7-A, and 8 of the incorporated case, although differing in color, material, size, and shape. Mr. Lemkin stated that he had sold merchandise of this character as pin trays and nut dishes to department stores and gift shops throughout the United States; that its uses, in his observation, were as candy, bonbon, or nut dishes, the chief use being as nut dishes.

In view of the stipulation as to the composition of these articles, we hold that they are properly dutiable as follows: Items No. 8955 and 8956 at 25 per centum ad valorem as household utensils, wholly or in chief value of pewter, under paragraph 339 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, and the remainder of the items, except items No. 3608 and No. 3161, at 40 per centum ad valorem as household utensils, in chief value of copper or brass, under paragraph 339 of the Tariff Act of 1930.

Mr. Lemkin stated that item No. 3161 was the same tray as exhibit 7–A of the incorporated case, except that it was in enamel. According to the stipulation, however, it is one of the articles composed wholly or in chief value of copper or brass. The witness testified that the items on plaintiff's collective illustrative exhibit B were used as candy, bonbon, or nut dishes. However, the record in the incorporated case shows that exhibit 7–A was always sold with exhibit 7–B (a wooden display stand) and the two were used together for decorative purposes. For that reason, it was held that exhibit 7–A was not dutiable as a household utensil but under paragraph 397 as an article, composed wholly or in chief value of copper. In view of the testimony that item No. 3161 was like exhibit 7–A, we do not believe that the general statement of Mr. Lemkin that the items on plaintiff's collective illustrative exhibit B were used as candy, bonbon, and nut dishes is sufficient to establish that the chief use of this item was as a household utensil. Since the evidence does not show that it was chiefly used as a smoker's article, as classified by the collector, we hold that it is properly dutiable at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as an article composed in chief value of copper or brass.

The protests have been abandoned as to the remaining item on plaintiff's collective illustrative exhibit B, item No. 3608.

The next group of articles includes plaintiff's illustrative exhibit C and similar articles listed in plaintiff's collective illustrative exhibit D. Plaintiff's illustrative exhibit C is said to be a miniature replica of a Chinese smoothing iron. It is a flat-bottomed, round receptacle with a long handle. The receptacle is approximately 3½ inches in diameter across the top and 2¼ inches across the bottom. Its depth varies from approximately 1⅜ inches to 2¼ inches. The handle is approximately 4¼ inches long. According to stipulation of counsel, it is composed wholly or in chief value of brass. Two similar articles in smaller sizes and composed of different material were received in evidence as plaintiff's illustrative exhibits J and K. Mr. Lemkin stated that he had seen such articles used as containers for small trees or Ming gardens, as nut and bonbon dishes, as decorative pieces, and as ash trays. In his observation, they were chiefly used at and prior to June 17, 1930,

as containers for little trees or little Ming gardens. He said that they were not suitable for use as ash trays because a cigarette would have to be placed vertically in the receptacle and would go out. Another witness, Mr. Krakauer, said that such articles were mostly used as containers "for artificial trees with little figures on them."

It has been held that vases used chiefly in the home for holding flowers are household utensils. *The Friedlaender Co.* v. *United States,* 62 Treas. Dec. 76, T. D. 45814, affirmed *sub nom United States* v. *The Friedlaender Co.,* 21 C. C. P. A. 103, T. D. 46445. The court said (p. 80):

> * * * Nor is it correct to contend that a vase which holds flowers is not a useful article. It is certainly as much a table or household utensil as were the flower bowls which the court in the decided case [*United States* v. *Ellis Silver Co.,* 16 Ct. Cust. Appls. 570, T. D. 43297] held to be within the purview of said paragraph. In this respect, there is no legal distinction between a flower vase and a flower bowl. And the correctness of that conclusion is in no sense affected by reason of the fact that the vase is not plain, but rather ornamental in construction and design. It is by no means exceptional or unusual that articles in the home may be useful, even though attractive in appearance. * * *

Similarly, a container for holding artificial trees or a Ming garden may be considered a household utensil.

In determining the classification of these articles, the following Treasury Department ruling, dated March 14, 1949, is to be noted (84 Treas. Dec. 86, T. D. 52171):

> (2) *Ash trays*—Miniature replicas of Chinese smoothing irons with copper bowls and enameled handles are classifiable as smokers' articles, not specially provided for, at the rate of 30 percent ad valorem under paragraph 1552, Tariff Act of 1930, as modified, and not as copper household utensils at the rate of 20 percent ad valorem under paragraph 339, Tariff Act of 1930, as modified. As this ruling will result in the assessment of duty at a rate higher than has heretofore been assessed under a uniform practice, it shall be applied only to such or similar merchandise entered for consumption or withdrawn from warehouse for consumption after 30 days after this abstract is published in the weekly Treasury Decisions. Bureau letter to collector of customs, Honolulu, T. H., March 2, 1949. (423.372)

From this statement it appears that the Department found that there had been a uniform practice of classifying miniature Chinese smoothing irons as household utensils under paragraph 339. Section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides:

> * * * No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; * * *.

In the instant case, it appears that all of the articles listed on plaintiff's collective illustrative exhibit D were entered prior to March 14, 1949. By reason of the provisions of section 315, as amended, *supra*, and by the terms of T. D. 52171 (2), the higher rate of duty authorized in the administrative ruling could not become effective until 30 days after publication in the weekly Treasury Decisions. While the liquidation of the entries involved took place after the effective date of the administrative ruling, the higher rate specified was not applicable, since all the merchandise had been entered prior to the publication of the ruling. See *Baker, Lyman & Co., Inc.* v. *United States*, 24 Cust. Ct. 113, 119–120, C. D. 1218.

The Treasury Department ruling refers to miniature smoothing irons "with copper bowls and enameled handles." It was stipulated that plaintiff's illustrative exhibit C was composed wholly or in chief value of brass and the handle is not enameled. However, some of the items on plaintiff's collective illustrative exhibit D are of copper, and plaintiff's illustrative exhibit K has an enameled handle. These items all appear to be of the same character and should be classified under paragraph 339 at varying rates according to the material of chief value.

It has been stipulated that all the items on plaintiff's collective illustrative exhibit D are composed wholly or in chief value of copper or brass, not plated with platinum, gold, or silver, or colored with gold lacquer, except items No. 4894 and No. 9489, and that item No. 9489 is composed wholly or in chief value of pewter, not plated with platinum, gold, or silver, or colored with gold lacquer. We hold, therefore, that all the items listed on plaintiff's collective illustrative exhibit D, except items No. 4894 and No. 9489, are properly dutiable at 40 per centum ad valorem under paragraph 339 of the Tariff Act of 1930 as household utensils in chief value of copper or brass, and that item No. 9489 is properly dutiable at 25 per centum ad valorem under paragraph 339, as modified by the trade agreement with the United Kingdom, T. D. 49753, as a household utensil in chief value of pewter. As to item No. 4894, the protest is overruled.

Plaintiff's illustrative exhibit I lists certain items (No. 881/S and No. 939/S) as being similar to item No. 9799 of plaintiff's collective illustrative exhibit D. They were entered on or about May 2, 1949, and therefore the Treasury Department ruling, T. D. 52171 (2) is applicable. Item No. 9799 is composed, according to stipulation, wholly or in chief value of brass, not plated with platinum, gold, or silver, or colored with gold lacquer. There is no stipulation as to the composition of items No. 881/S and No. 939/S. Mr. Lemkin testified that the items on plaintiff's illustrative exhibit I were composed of the same material as, but differed in size and shape from, the items to

which similarity is claimed. However, item No. 9799 in protest No. 162020–K is described in the invoice as "Antique brass flower pot with cinnibar handle," while items No. 881/S and No. 939/S in protest No. 162388–K are described in the invoice as follows:

881/S—"Brass iron trays with enamel decoration"
939/S—"Brass silent butlers with enamel decoration"

In view of these invoice descriptions, we hold that the general testimony of Mr. Lemkin as to the composition and use of various articles in plaintiff's illustrative exhibit I is insufficient to establish the composition and use of the specific articles herein referred to. The protests are overruled as to items No. 881/S and No. 939/S.

The next group consists of plaintiff's illustrative exhibits E–1 and E–2 and identical articles listed on plaintiff's illustrative exhibit H as item No. 17937. Plaintiff's illustrative exhibit E–1 is a tray in the form of a leaf, approximately 5 inches square and ¾ inch deep. It was stipulated at the trial that it was in chief value of soapstone. Plaintiff's illustrative exhibit E–2 is a wooden stand into which the tray fits.[1] Mr. Lemkin testified that the chief use of these articles at and prior to June 17, 1930, was as decorative pieces; that he had never seen them used as ash trays; that he had never sold the tray separate from the stand. He said that a cigarette could rest on plaintiff's illustrative exhibit E–1, but that one would have to balance it; that the break in the article is part of the lotus leaf and not a cigarette groove; that a cigarette will rest in it but not properly; that it would go out, or, after it burned far enough, it would fall off onto the table. Mr. Krakauer said he had seen such articles used as ornaments, as containers for plants and floating flowers, but mostly as bonbon and nut dishes. While the collector classified this merchandise as smokers' articles, there is no evidence that it was chiefly used as such and the presumption of correctness is overcome by testimony that it was chiefly used for other purposes. Since the record does not establish the chief use and since it has been stipulated that plaintiff's illustrative exhibit E–1 is in chief value of soapstone, we hold that said article and the identical items listed on plaintiff's illustrative exhibit H are properly dutiable at 35 per centum ad valorem under paragraph 209 as manufactures of which soapstone is the component material of chief value.

Plaintiff's illustrative exhibit I lists certain items as being similar to item No. 17937 on plaintiff's illustrative exhibit H. Mr. Lemkin testified that as to those items the material was the same but the shape and size were different. "In other words," he said, "the soapstone tray we have there would be in brown color or a larger size possibly." It was stipulated that these items are manufactures of

[1] Plaintiff's illustrative exhibit E–2 and like articles were assessed with duty under paragraph 412 as manufactures of wood and no question has been raised as to that classification.

which soapstone is the material of chief value. We hold, therefore, that such articles are dutiable at 35 per centum ad valorem under paragraph 209 of the Tariff Act of 1930.

The next group includes plaintiff's illustrative exhibit F and identical articles listed on plaintiff's illustrative exhibit H as item No. 9627. The article is an irregularly shaped receptacle about 3¼ inches long and from 1¼ to a little over 2 inches wide. It is approximately ⅜ to ⅝ of an inch deep. It has three small legs and apparently had some kind of handle which has been broken off. Mr. Lemkin testified that in his opinion the chief use of plaintiff's illustrative exhibit F at and prior to June 17, 1930, was as a decorative piece on a whatnot shelf or a table. This was also the opinion of the witness Krakauer. Mr. Lemkin also said that he had never seen this article used as an ash tray; that if a cigarette were placed therein, it would be extinguished after it had burned down halfway. On the basis of this testimony and the stipulation that plaintiff's illustrative exhibit F, item No. 9627, is in chief value of copper, not plated with gold, silver, or platinum, or covered with gold lacquer, we hold that it is dutiable at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930.

Plaintiff's illustrative exhibit I lists certain items as being similar to item No. 9627 of plaintiff's illustrative exhibit H. Mr. Lemkin testified that the material of these items was the same as that of item No. 9627 but the size and shape were different. According to the stipulation, these articles are wholly or in chief value of copper or brass not plated with platinum, gold, or silver, or covered with gold lacquer. We hold, therefore, that they are dutiable at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930.

The next group of articles consists of plaintiff's illustrative exhibit G and identical articles listed on plaintiff's illustrative exhibit H as item No. 6854. The article is a receptacle approximately 3¾ inches by 3¼ inches and 1 inch deep, with a handle about 4¼ inches long. Mr. Lemkin testified that he had seen like articles used as nut and candy dishes and as ash trays, and that the chief use at and prior to June 17, 1930, was as nut and candy dishes. This was also the opinion of the witness Krakauer. It was stipulated that this item was in chief value of copper, plated with silver on copper, but not plated in any part of platinum or gold, or colored with gold lacquer. The collector classified these articles as smokers' articles, but the presumption of correctness attaching to this classification is overcome by the testimony that they were chiefly used as bonbon and nut dishes. Since this use is a household one, we hold that these articles are properly dutiable at 35 per centum ad valorem under paragraph 339 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, as household utensils, plated with silver on copper.

Plaintiff's illustrative exhibit I lists certain items as being similar to item No. 6854 of plaintiff's illustrative exhibit H. Mr. Lemkin testified that they were composed of the same material as that of item No. 6854 but the size and shape were different. The invoice description of item No. 6854, protest No. 156431–K, is "enamel bowl on copper, with jade handle." The invoice description of item No. 3208, protest Nos. 158785–K, 162020–K, and 159442–K, is "enamel bowl on copper, silver finished with jade handle." Item No. 3208 H, protest No. 158298–K, is similarly described. Item No. 14212, protest No. 158298–K, is described as "enamel lotus shape tray on copper, silver finished w/jade handle." In view of Mr. Lemkin's testimony and the invoice descriptions we hold that these items are properly dutiable at 35 per centum ad valorem under paragraph 339 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, as household utensils, plated with silver on copper. Item No. 6854 B, protest No. 156428–K, is described as "enamel lotus shape trays with brass edge." Since there is some doubt, therefore, that this article is plated with silver on copper, the protest is overruled as to this item.

The protests are sustained as indicated above, and the items are held properly dutiable as set forth in schedule "A," hereto attached and made a part hereof. As to all other items and in all other respects, the protests are overruled. Judgment will be rendered accordingly.