DAVIES, TURNER & Co. *v.* UNITED STATES (No. 4706)[1]

United States Court of Customs and Patent Appeals, March 11, 1953

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for appellant.
*Charles J. Wagner,* Acting Assistant Attorney General (*Richard F. Weeks* and *Richard H. Welsh,* special attorneys, of counsel), for the United States.

[Oral argument February 12, 1953, by Mr. Schwartz and Mr. Weeks]

Before GARRETT, Chief Judge, and O'CONNELL, WORLEY, COLE, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, pursuant to its decision, Abstract 55708,

[1] C. A. D. 517.

overruling the protest of appellant herein against the classification of "10000 bicycle chains of iron, size ½ to ⅛ inches, 53″ long * * *" as parts of bicycles within the purview of paragraph 371 of the Tariff Act of 1930 (19 U. S. C., sec. 1001, par. 371). Duty was assessed on the importation at the rate of 30 per centum ad valorem. Paragraph 371 reads as follows:

Bicycles, and parts thereof, not including tires, 30 per centum ad valorem: * * *

The appellant claimed the involved merchandise to be properly dutiable under the provisions of paragraph 329 of said act as modified by the Trade Agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, effective January 1, 1939. As so modified, that paragraph reads:

Chains of iron or steel, used for the transmission of power, of not more than two-inch pitch and containing more than three parts per pitch, and parts thereof, finished or unfinished, all the foregoing if valued at not less than 40 cents per pound, 25% ad val.

In its consideration of the contentions advanced by appellant, the Customs Court observed that "The record discloses that although the chains in this importation were actually used in the assembly of bicycles, an effort was made to show that they could be used in power lawn mowers, juke boxes, vending machines, and English-type velocipedes. The testimony fails to sustain the claimed use of the chains for purposes other than on bicycles."

It seems to us the success or failure of appellant's cause here, as below, rests primarily upon that particular point. It is, of course, too well settled to require citation that the importer is under a two-fold burden in matters of classification in that he must not only prove the Government's classification to be erroneous but must also prove that his own claimed classification is the proper one.

In seeking to discharge its burden, appellant presented one William Jerome Fritz, the only witness called. Mr. Fritz testified that he was the Comptroller and Secretary of Arnold Schwinn & Company, the ultimate consignee herein; that said company manufactured bicycles; and that he was familiar with the involved importation.

In evaluating his testimony, we think it advisable to quote at some length from the record as follows:

Q. Have you seen chains such as Exhibit 1 used in any other way than on bicycles?

A. Yes.

Q. In what way?

A. I myself own a power lawn-mower that uses chains of this type. I have seen it used recently, and for some time in the past, on juke boxes, vending machines, English-type velocipedes—that is just naming a few. I probably could think of some others.

Q. What function does it serve a lawn-mower?

A. It transmits the power from the drive shaft to the engine, to the cutting wheels that carry the motor.

Q. Do you know what function it serves in a juke box?

A. It is driving the mechanism from a motor to probably the record changers. I am not thoroughly familiar with the inwards, the working mechanism of a juke box.

Q. And do you know what function it serves in a velocipede?

A. Definitely as a matter of power from the pedals to the rear wheels.

However, on cross-examination the following information was developed:

XQ. Mr. Fritz, these chains which you stated you have seen used in lawn-mowers and juke boxes, do you measure those chains to see what length they were?

A. No, they probably were of different lengths.

XQ. Different lengths?

A. Yes.

XQ. They were not necessarily 53 inches, were they?

A. Not necessarily, no.

XQ. Did you make any examination of the chains that you have seen in lawn-mowers and juke boxes as to the tensile strength of the material of which they are composed?

A. (No response.)

XQ. Did you make any examination?

A. No, no laboratory test or anything.

XQ. Did you make any inquiry or study as to what material they were composed of? Did you make any inquiry or study?

A. No.

XQ. Did you measure the chains that you saw in the lawn-mower or juke box? Did you measure the pitch in those chains?

A. (No response.)

XQ. Did you measure—

A. No.

XQ. Did you measure the parts per pitch in those chains?

A. No.

XQ. Does your firm manufacture anything other than bicycles?

A. No.

XQ. The chains before the Court were actually used by your firm in the manufacture of bicycles, were they not?

A. Well, they are a part of—they are added to the bicycle.

XQ. They are used in manufacturing the bicycle, is that correct?

A. In the assembly—let's put it in the assembly of the bicycle. A little clearer.

XQ. Does your firm only assemble parts?

A. No, we make a good percentage of the parts but this is used in the assembly.

XQ. Did you sell any of the chains like those before the Court as replacement parts for a bicycle?

A. No, ma'am.

XQ. You purchased and imported these chains for the purpose of using them in assembling bicycles, did you not?

A. That is correct.

XQ. Did you order them by specifications as to length of pitch and number of parts per pitch?

A. Yes.

XQ. And what length of pitch did your specifications call for?

A. Pitch, do I understand you to say—

XQ. Yes.

A. Half-inch.

XQ. And what number of parts per pitch did your specifications call for?

A. We don't specify that. That is commonly accepted in the trade that all roller chain is made that way.

XQ. I didn't hear the last part.

A. Well, now, maybe I am going too far when I say "all," but roller chain of this general size and type is always made that way.

XQ. Well, I mean, how many parts per pitch?

A. You asked me if we specified that, and I said no, we did not.

XQ. You say, then, that it is always made in a certain number of parts per pitch?

A. That is right.

XQ. And what number is that?

A. 5.

XQ. How many?

A. 5.

XQ. In furnishing specifications when you purchased these chains, did you order them for use on a particular size sprocket?

A. No.

XQ. Or bicycle?

A No.

XQ. Do you have only one size sprocket?

A. No, we have many sizes of sprockets.

XQ. And can you use these on all sizes, these chains?

A. No.

XQ. What particular size does this particular chain fit on a bicycle?

A. You embarrass me by that question because we actually made a mistake in ordering these. It just happens that 53-inch was a little bit off size for our regular adult bicycle, and it was necessary for us to extend these 2 inches in the case of the men's adult, and one inch in the case of the lady's bicycles.

XQ. These were according to specifications as you ordered them, they were delivered according to specification.

A. Yes.

XQ. And you had ordered them two inches two [sic] short?

A. That is right.

XQ. For your bicycle?

A. That is right.

XQ. And you altered them to fit the bicycle, is that correct?

A. Yes.

XQ. The bicycle will not operate without a chain like those before the Court, will it?

A. There are none made today that operate any other way. It could be—

XQ. I mean, if you made one of your bicycles and left the chain off, you couldn't operate the bicycle, could you?

A. That is right.

XQ. It would not operate normally as a bicycle would it?

A. No.

XQ. It is an essential part of the bicycle, then, is it not?

A. That is right.

Although the witness was unable to state that the composition of the chains was iron or steel, other evidence, namely, Exhibit 2, reflects that the involved merchandise was composed of steel.

In considering the above testimony and exhibit, we have carefully examined the cases cited by appellant[1] in support of its position that the evidence presented was sufficient to establish a prima facie case. It is our belief, however, that those cases do not justify our disturbing the conclusion of the Customs Court that the importer failed to prove other uses for this particular type of chains. We believe it is obvious that the testimony consisted merely of opinions and conjectures rather than facts. Moreover, the record clearly discloses that the chains were ordered according to specifications of the importer for use on bicycles; that they were used exclusively in the assembly or manufacture of bicycles; and that chains of this particular type are an essential and constituent part of bicycles.

While, the other assignments of error have been examined, it is our conclusion that, since the appellant failed to prove other uses for the involved merchandise, it is not necessary to discuss them.

For the reasons stated, the judgment of the Customs Court is *affirmed.*

JACKSON, J., retired, recalled to participate herein.

---

[1] *Klipstein* v. *United States,* 1 Ct. Cust. Appls. 122, T. D. 31120; *United States* v. *S. S. Perry,* 25 C. C. P. A. (Customs) 282, T. D. 49395.

