(C. D. 1820)

RELIANCE INTERNATIONAL MFG., LTD. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 8, 1956)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: There were imported from Germany certain parakeet playpens covered by the entry accompanying the protest herein, which the collector of customs at the port of New York classified as articles or wares, not specially provided for, composed of metal, within the purview of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and subjected to duty at the rate of 22½ per centum ad valorem.

By stipulation of the parties hereto, it has been agreed that the articles in issue are composed in chief value of steel, not plated with gold or silver, and not enameled or glazed with vitreous glasses.

The claim in the protest relied upon by plaintiff is that said parakeet playpens should properly have been classified as household utensils, composed in chief value of steel, pursuant to paragraph 339 of said act (19 U. S. C. § 1001, par. 339), as modified, *supra*, for which duty at the rate of 20 per centum ad valorem is provided.

The alternative claim for classification of the articles as household utensils, composed in chief value of brass, in said paragraph 339, as modified by the Presidential proclamation to the General Agreement on Tariffs and Trade, 83 Treas. Dec. 166, T. D. 51909, and dutiable at 15 per centum ad valorem, has been abandoned by the plaintiff.

When this case came on for hearing before the court, the testimony of one witness was offered by the plaintiff and none by the defendant.

Arthur L. Rosenel stated that, for the past 11 years, he has been president of Reliance International Mfg., Ltd., the plaintiff herein, his duties consisting of purchasing, selling, and general administration. The business of his company is the importing, manufacturing, and wholesaling of pet supplies. Previous thereto, and since 1929, he was employed as a salesman for the firm of Schoenmann & Mayer, Inc., handling merchandise of the same nature.

Witness Rosenel identified a sample of the merchandise in issue, which was imported in a knocked-down condition for convenience in transportation, and said sample was marked in evidence as exhibit 1.

He stated that the merchandise so represented constitutes a complete article.

It will be helpful at this point to give a word description of the parakeet playpens in controversy. In its imported condition, as was stated by plaintiff's witness Rosenel, the article was in a knocked-down condition. It consists of a metal base, the approximate dimensions of which are 10 inches wide by 15¼ inches long by 1¼ inches deep, into which has been inserted a metal tray of a slightly smaller size. There is also a wire ladder-shaped bar, approximately 3 inches wide by 35 inches long, formed into a semicircle, the ends of which protrude at right angles for insertion into holes in the base, which ends have been threaded and are equipped with nut attachments. The rungs of the ladder formation are 1¼ inches apart. Attached to the top of the ladder structure is a wire fixture by which the playpen, when assembled, may be suspended. To one side of the ladder is a polished square of metal, approximately 3 inches by 3 inches, which serves as a mirror. A wooden rod, grooved at each end, approximately 14¾ inches long, is provided as a perch, from which there is to be suspended a 4-inch swing. For hanging from the top of the wire ladder-shaped bar, there is a wooden rod, 6¾ inches in length, into which there have been inserted at various angles three 6¼-inch wooden perch rods, to one of which there is attached a small metal bell.

Rosenel further testified that, whereas he did not design the playpen, he assisted in its design and that the imported article was intended specifically for a parakeet. He stated the purpose of the article is for use in a household for a parakeet to play and exercise in and that it is used generally in conjunction with a bird cage, the parakeet being trained to work, play, and exercise in the playpen. The bird climbs over the wire parts of the article which form the shape of a ladder, inasmuch as parakeets are inclined to climb, and plays with the bell and uses the swing as well. When the playpen is in use, the bird is restricted to a room or part of the house so that he does not fly away. The parakeet playpen could not properly be used out of doors, because the bird would fly away or would be the prey of cats.

Rosenel stated that his sales of the articles in controversy were made to pet shops, variety stores, department stores, and seed stores, and that he had sold to Macy's, The May Co. department stores, Sears-Roebuck, F. W. Woolworth Co., and W. T. Grant.

As to the use of articles like exhibit 1, the witness stated that, as far back as 1929, he has seen it used "As a playpen for exercise and general enjoyment of both the family and the bird" in the homes of parakeet breeders or parakeet owners. In the early 1930's, there was a ban on the interstate shipping of parakeets, and, in 1950, the ban was lifted, but the use of the playpens has been the same during the entire period of his experience. When asked by the court, "Do

you know of your own knowledge whether Exhibit 1 is used in the household or has been used in the household chiefly throughout the United States of America?" the witness replied, "Yes, sir," adding that he has not sold the playpen for any other purpose than for use by a parakeet in a household.

In support of its contention that the parakeet playpens before the court should properly be classified as household utensils within the purview of paragraph 339, as modified, *supra*, plaintiff cites the case of *Heemsoth & Basse* v. *United States*, 72 Treas. Dec. 385, T. D. 49191, wherein bird cages which had been classified as articles of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930, were held to be properly classifiable as household utensils pursuant to paragraph 339 of said act.

It is contended by defendant in its brief that plaintiff has failed to prove that the imported article is chiefly used in the home, and, further, that the *Heemsoth* case is not applicable to the facts of the present case for the reason that the bird cages there before the court had the utilitarian purpose of confining the bird, which is not true of the parakeet playpens in controversy, and that the imported articles do not contribute to the cheer and enjoyment of the occupants of the home.

We are not in agreement with defendant's contention that chief use of the parakeet playpens in controversy has not adequately been shown. Whereas it is true that the record before the court contains the testimony of but one witness on behalf of plaintiff, that testimony, uncontradicted as it is, is deemed to be sufficient, as was the case in *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120.

In the *Klipstein* case, *supra*, our appellate court stated—

The only question in this case is, was there sufficient evidence before the board to establish at least *prima facie* that birch tar oil is used as a dressing for leather and for no other purpose. The decision of this question depends upon the weight and value which should be given to the testimony of one unimpeached witness when considered in connection with the chemist's report and the special report of the appraiser. We think that the testimony was sufficient at least to throw the burden on the Government of showing that it was not used as a dressing for leather or that that was not its only use. Had the report of the appraiser or that of the chemist been to the effect that the importation was used for some other purpose than the stuffing or dressing of leather there might have been some force in the claim that the presumption which obtains in favor of such reports and the classification of the collector had not been overcome by a preponderance of evidence. That was not this case, however. Indeed, if anything, the report of the appraiser is corroborative rather than contradictory of the testimony of the witness. That testimony was, it is true, negative in character as to whether the oil might not be put to some other use than that of dressing leather, but it was direct, affirmative, and positive, first, that it was used for dressing leather in order to give it the distinctive odor of russia leather; second, that in all his years of experience with the oil the witness knew of no other use for it; and, third, that it was imported by his firm to be sold and was sold exclusively to tanners and jobbers in tanning

materials. The mere fact that the merchandise might *possibly* have some other use than that specified is not sufficient of and by itself to overcome or counterbalance the probative effect of the sworn declaration of a single witness of ten years' experience with the goods that they have but one use because he knows of but one use for them. United States *v.* Wells (77 Fed. Rep., 411). Especially must this be true when the official report of the appraiser mentions but one use for the importation and that use the one testified to by the witness as the sole use of which he is aware. * * * [Italics quoted.]

The record before us contains the unequivocal statement of witness Rosenel, whose experience goes back to 1929, prior to the effective date of the Tariff Act of 1930, that, of his own knowledge, he knows that parakeet playpens, as represented by exhibit 1, are used in the household and have been so chiefly used throughout the United States. Such testimony, unrefuted, leads us to the conclusion that chief use of the article in the household has been adequately proven.

As was stated in the *Heemsoth* case, *supra*, "The mere fact, however, that they are chiefly used in homes does not *ipso facto* make the bird cages household utensils. They must be used for a utilitarian purpose within the meaning of paragraph 339." The reasoning so aptly applied in the *Heemsoth* case, *supra*, we deem to be controlling of the present issue. In that case, it was stated—

The most recent pronouncement of the appellate court as to the scope of articles included in paragraph 339 as household utensils is the case of *I. W. Rice & Co.* v. *United States*, T. D. 48415, 24 C. C. P. A. 114, 70 Treas. Dec. 52, involving the question of the tariff classification of certain toilet atomizers. In that case the court said:

It is clear from the authorities hereinbefore referred to that the term "household" means family. Accordingly, the term "household utensils" must mean utensils used by the members of the household, either for their personal convenience and comfort, or for the care and maintenance of the household. We are of opinion, therefore, that the term "household utensils", as used in paragraph 339, *supra*, was intended to include not only utensils which are used in the maintenance and care of the home, but also those, not more specifically provided for, which are chiefly used in the household by the members thereof collectively for their convenience and comfort.

In Webster's New International Dictionary, the word "comfort" is defined, among other things, as follows:

2. State or feeling of having relief, cheer, or consolation; * * *.

3. Satisfaction; enjoyment.

It is a matter of common knowledge of which this court may take judicial notice that the presence in the home of a singing canary bird in a cage contributes to the cheer and enjoyment of the occupants. * * *

It having been held in the *Heemsoth* case, *supra*, that the presence in the home of a singing canary bird in a cage contributes to the cheer and enjoyment of the occupants, in like manner do we consider the parakeet playpens before the court a source of "comfort," as defined in Webster's New International Dictionary, *supra*, which brings the articles within the definition of household utensils as defined by our

appellate court in the case of *I. W. Rice & Co.* v. *United States*, 24 C. C. P. A. (Customs) 114, T. D. 48415.

Upon the record before us, we find and hold that the parakeet playpens in controversy should properly have been classified as household utensils, composed in chief value of steel, within the purview of paragraph 339 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, and subjected to duty at the rate of 20 per centum ad valorem. That claim in the protest is, therefore, sustained. The alternative claim for classification of the articles as household utensils, composed in chief value of brass, in said paragraph 339, as modified by the Presidential proclamation to the General Agreement on Tariffs and Trade, *supra*, for which duty at the rate of 15 per centum ad valorem is provided, having been abandoned, is dismissed.

Judgment will be entered accordingly.