BEFORE THE FIRST DIVISION, OCTOBER 26, 1960

No. 64803.—A. Ponnock & Sons *v.* United States, protest 58/23213 (Philadelphia).

OLIVER, Chief Judge: This protest involves merchandise that is described on the invoice as "FOUR-CHILDREN'S LUGGAGE," which was assessed with duty at

the rate of 70 per centum ad valorem under the provision in paragraph 1513 of the Tariff Act of 1930, for toys, not specially provided for. Plaintiff claims that the articles are not toys, but that they are properly classifiable as manufactures of paper, not specially provided for, under paragraph 1413 of the Tariff Act of 1930, and dutiable thereunder at the rate of 35 per centum ad valorem. It will be noted that the merchandise in question was exported from Czechoslovakia, a Communist-dominated country; therefore, the assessment by the collector and plaintiff's claim are rates applicable under the basic law, i.e., the Tariff Act of 1930.

Tariff classification of merchandise as toys is controlled by statutory definition, set forth in paragraph 1513 of the Tariff Act of 1930 as follows:

PAR. 1513. * * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

The controlling element in the foregoing definition is the matter of chief use, and such use is "for the amusement of children, whether or not also suitable for physical exercise or for mental development."

All of the evidence adduced herein was offered on behalf of plaintiff. In addition to samples of the merchandise in question, four witnesses testified.

The merchandise in question, as disclosed from an examination of the samples (plaintiff's exhibits 1-A, 1-B, 1-C, and 1-D), consists of four small pieces of hand luggage. They are composed of heavy cardboard with a pattern of white dots over a dark background. The inside lining consists of decorated paper having various blue-colored figures, that include dolls, clowns, elephants, and balls. Each of the pieces is of a different size, and they are made so that the smaller ones fit or "nest" inside the larger ones. The largest is about 14 inches long, 9 inches wide, and 4½ inches deep. The smallest is 8 inches long, 6 inches wide, and 3 inches deep. All have metal hinges and snap locks and are equipped with a light metal handle by which they may be carried. It is agreed between the parties that the merchandise is in chief value of paper.

A partner of the plaintiff firm, who purchased the merchandise in question and had charge of the sale thereof, stated that 70 per centum of the shipment, consisting of 5,000 sets of the merchandise under consideration, was sold to Snellenberg's Department Store in Philadelphia and that the balance was sold in small lots to small dealers in the Philadelphia area.

Plaintiff's second witness stated that he has been employed by Snellenberg's of Philadelphia for 6½ years, originally as an assistant buyer and, at present, as a buyer of toys and housewares. He stated that Snellenberg's of Philadelphia has been buying this luggage for 3 years, having sold approximately 3,000 sets, that he purchased the articles in question, and that he supervised the advertising thereof to the general trade. He testified, further, that this merchandise is displayed in the housewares and toy departments and that it is advertised from the standpoint of its practical value, as being susceptible of many uses, and not as articles of "play value" for children.

Two housewives also testified. Their combined testimony is to the effect that their children use the luggage in question and that it is never used as a plaything, but always for a practical purpose. The two larger sizes are used as suitcases for overnight visits, or for carrying dancing shoes and other articles. The smaller sizes are used as lunch boxes. The witnesses further testified that they, as mothers, used the smaller sizes for carrying food and other essentials for their infants.

Counsel for defendant, in his brief, argues that the evidence herein is not sufficient to support plaintiff's contention under the principle of chief use, as the rule was applied in *Pacific Guano & Fertilizer Co. et al.* v. *United States,* 15 Ct. Cust. Appls. 218, T.D. 42240, and *United States* v. *The Baltimore & Ohio R.R. Co.,* 47 C.C.P.A. (Customs) 1, C.A.D. 719.

In the *Pacific Guano & Fertilizer Co. et al.* case, the merchandise consisted of certain ground tankage of a high grade, such as was used both for fertilizer and for feed. In holding that appellants had not sustained their claim for classification of the merchandise as a substance used chiefly for fertilizer, the appellate court reasoned as follows:

The actual use of the *tankage in controversy* and the chief use of high-grade tankage *in California* does not determine the classification of the merchandise. Whether tankage of the *grade* imported was chiefly used as a fertilizer in the United States was the issue presented. What the tankage imported was actually used for and the chief use of high-grade tankage in California did not establish the chief use of high-grade tankage in the United States. Of course, if it had been proven that most of all high-grade tankage, imported and domestic, was used in California and as a fertilizer, a different case might be presented.

Every intendment must be presumed in favor of the collectors' classification, and his classification of the goods covered by the protests under consideration imposed on the importer the burden of proving *that tankage of the grade imported was chiefly used as fertilizer.* The importer did not meet that burden by proving that the high-grade tankage *covered by the protests* was chiefly used as a fertilizer or by proving that high-grade tankage was so used in California. [Italics quoted.]

*The Baltimore & Ohio R.R. Co.* case, *supra,* involved certain so-called after-dinner coffee cups and saucers of various shapes and decorated in different patterns. The court's conclusion, excluding the merchandise from classification as tableware and holding it to be within the provision for ornamental articles, was stated as follows:

Predicated upon a variety of factors including the shapes, designs, and quantities in which the articles were sold, the novelty departments and types of stores which handled the merchandise, and the vast increase of sales of "after-dinner coffee cups," we find that the preponderance of the evidence supports appellee's contention that the subject importation is of a class whose chief use is as ornamental or decorative ware rather than "tableware," as used in the applicable exception set forth in GATT.

It will be observed that, in each of the cited cases, the application of the principle of chief use was based on the type or class of merchandise involved therein and the record evidence relating to the particular issue presented. Our appellate court recognized the importance of those factors in determining the classification of certain uninflated rubber balls in *United States* v. *F. W. Woolworth Co.,* 23 C.C.P.A. (Customs) 98, T.D. 47765, wherein it is stated:

We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the *question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.*

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule. [Italics supplied.]

In this case, the samples of the merchandise in question (exhibits 1–A to 1–D, *supra*) have an important influence in determining the classification thereof. Samples are potent witnesses. *United States* v. *The Halle Bros. Co.,* 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *May Department Stores*

*Co.*, 16 Cust. Ct. Appls. 353, T.D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C.C.P.A. (Customs) 68, T.D. 44029. The luggage in question is a class of merchandise that "would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another," the *Woolworth* case, *supra*. While the items in question are cheap and of light construction, those characteristics, of themselves, are not sufficient to hold that the merchandise is properly classifiable under the provision for toys. Their general appearance is corroborative of plaintiff's testimony to the effect that this luggage serves a practical use, rather than as articles for the amusement of children.

The uncontradicted testimony of two housewives is also an important element in plaintiff's line of evidence. Their statements, based on actual use of this merchandise, offers substantial support of plaintiff's claim. In *J. E. Bernard & Company, Inc.* v. *United States*, 27 Cust. Ct. 291, Abstract 55793, which involved celluloid reindeer of various sizes that had been classified as toys and claimed to be dutiable as articles in chief value of compounds of celluloid, we said:

The uncontradicted testimony of a single witness is sufficient to throw the burden on the Government of showing that the chief use of this merchandise was not as stated by the witness, but to amuse children. *Nadel & Schimmel* v. *United States*, 61 Treas. Dec. 927, T.D. 45629. In the case at bar, plaintiff's witness stated a use for this merchandise other than for the amusement of children. The testimony shows that the chief use of the merchandise is for a decorative effect. This proof has not been rebutted nor contradicted by the defendant in any way and indicates *prima facie* that it is chiefly used for the purpose stated by the witness. In addition, an examination of the sample indicates that it is suitable for such use. We therefore hold that the plaintiff has made out a *prima facie* uncontradicted case showing that these celluloid reindeer are not toys. \* \* \*

The substance of the foregoing quotation, as it relates to the principle of "chief use," can be applied with equal force and effect in this case.

There is also before us the testimony of a merchant, who handled thousands of sets of the articles in question, showing that this luggage is never regarded as a plaything but always as a commodity having a variety of utilitarian uses. The probative value of such testimony can be drawn from the following excerpt from the decision in *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120, wherein the court stated as follows:

\* \* \* Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. \* \* \*

The presumption of correctness, that attaches to the collector's classification and upon which defendant was entitled to rely until plaintiff has made out a *prima facie* case, has been overcome. The presumption is not evidence and may not be weighed against the evidence produced at the trial. *Marshall Field & Co.* v. *United States*, 20 C.C.P.A. (Customs) 225, T.D. 46037. The burden of going forward shifted to the defendant. *United States* v. *Edson Keith & Co.*, 5 Ct. Cust. Appls. 82, T.D. 34128. Defendant offered no evidence of any kind and made no attempt to dispute plaintiff's positive proof.

Plaintiff's evidence, as hereinabove discussed, is sufficient to remove the merchandise under consideration from the provision in paragraph 1513 of the Tariff Act of 1930, for toys, not specially provided for, as assessed by the collector. Since it is conceded that the articles are in chief value of paper, they are, therefore, properly classifiable under the catchall provision in paragraph 1413 of the Tariff Act of 1930, for manufactures of paper, not specially provided for.

On the basis of the record herein, and for all of the reasons hereinabove set forth, we hold the merchandise involved herein to be dutiable at the rate of 35 per centum ad valorem under paragraph 1413 of the Tariff Act of 1930, as manufactures of paper, not specially provided for, as claimed by plaintiff.

The protest is sustained and judgment will be rendered accordingly.