(C. D. 780)

SCHOEMANN & MAYER *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 16, 1943)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: An importation of dog collars was classified by the collector of customs at the port of New York as articles not specially provided for, wholly or in chief value of metal, under paragraph 397 of the Tariff Act of 1930. Duty was assessed accordingly at the rate of 45 per centum ad valorem.

Plaintiff, in its protest, invokes various statutory provisions imposing lower rates of duty, but in its brief relies solely upon the claim that the merchandise is properly dutiable at the rate of 4 cents per pound under the provision in paragraph 329 of said act for "Chain and chains of all kinds, made of iron or steel, * * * less than five-sixteenths of one inch in diameter."

At the trial the case was submitted for decision without the introduction of any oral testimony. However, plaintiff introduced an

(1)

official sample which was received in evidence and marked exhibit 1. It was stipulated by counsel for the respective parties that this exhibit represents all of the merchandise which was assessed with duty at the rate of 45 per centum ad valorem, and that it is a "dog collar." It was further stipulated that if the pronged portion of the exhibit be considered by the court to be chain, then the article is in chief value of chain.

Marked exhibit 2 herein is a report of the chief chemist in the United States Customs Laboratory at the port of New York, which discloses, with reference to exhibit 1, that "the links of the chain are made of low carbon steel (nickel-plated)," and that "the diameter of the links of the pronged portion are 3.90 mm or 0.1535 inches (approximately $\frac{5}{32}$") (0.1562 inch)."

The above constitutes all of the evidence in the case.

An inspection of exhibit 1 shows that it is composed in part of two lengths of chain about 5½ inches long made of twisted links. These two lengths are brought together at each end by a steel ring about 1 inch in diameter, completing an endless chain. Between the two rings another series composed of nine links is attached. These links are somewhat fancifully U-shaped and are so connected that the ends project outward, with bent tips assuming a pronged appearance. As above indicated, all of the links in the article are less than $\frac{5}{16}$ of 1 inch in diameter.

First, we shall determine whether or not the pronged portion of exhibit 1 is in fact chain; and secondly, whether or not in its imported condition the article is properly classifiable under the provision for "chains of all kinds, made of iron or steel," as contemplated by paragraph 329, *supra*.

In its brief filed herein plaintiff relies upon the case of *C. J. Tower & Sons* v. *United States*, T. D. 41118, 48 Treas. Dec. 220, wherein this court held certain automobile truck tire chains, equipped with fastening devices and used as nonskid chains, to be properly dutiable under the provision for "chains of all kinds" in paragraph 329 of the Tariff Act of 1922 at the appropriate rate, depending upon the diameter of the constituent chain.

Plaintiff also invites our attention to the following definition from Webster's New International Dictionary, Second Edition:

chain: 1. A series of links or rings, usually of metal, connected, or fitted into one another, used for various purposes, as of support, of restraint, of ornament, of the transmission of mechanical power, etc. Chains are made in many forms and sizes; as, bicycle *chain;* cable *chain;* furnace *chain,* etc. * * *.
4. A series of things linked together; as, a *chain* of mountains; a *chain* of events or ideas.

Based upon this definition, plaintiff argues that the pronged portions of exhibit 1 are certainly "linked together," and that they are

in fact "a particular kind of link which has been made into a chain." With this contention we are inclined to agree.

Chain is made in a variety of ways, depending upon the material used, the size, link formation, and the purpose for which it is intended. New International Encyclopaedia, Second Edition (1920) Vol. V, page 3.

While it is true that the ends of the links in exhibit 1 are not welded, nevertheless it seems to be a well-known fact that "some of the strongest chains are made by the production of the so-called 'weldless' links." This type is illustrated in fig. 4 in Machinery's Encyclopaedia (1917) Vol. II, page 45. See also Encyclopaedia Britannica, 11th Edition, 1929, Vol. I, page 517.

Being satisfied that the so-called pronged portion of exhibit 1 is chain, it follows, in view of the agreement of the respective parties, that the article in its entirety is a dog collar wholly or in chief value of chain.

This leads us to the second question whether, upon the record before us, the article is properly classifiable under the provision for "chain and chains of all kinds, made of iron or steel," as contemplated by paragraph 329, *supra*.

Plaintiff contends that the principles enunciated in the *Tower* case, *supra*, require a finding that the article in controversy is within the purview of the provision above quoted. In that case, however, this court (then the Board of General Appraisers), speaking through Fischer, G. A., said of paragraph 329 of the Tariff Act of 1922, which is the same, *verbatim*, as paragraph 329 of the Tariff Act of 1930:

It will be observed that the paragraph provides not only for "chain" in the form of material, but also for "chains of all kinds, made of iron or steel," thereby indicating a purpose to include in the latter provision the various articles which are commercially designated as "chains" of different kinds, as distinguished from the mere material chain.

In using the phrase "articles which are *commercially* designated as 'chains' of different kinds," the Board did not intend to exclude articles *commonly* designated as "chains" of different kinds, inasmuch as the commercial and common understanding is the same, in the absence of proof to the contrary. The article before us is definitely established to be a dog collar. There is no suggestion anywhere in the record that it is known or designated by any other name. Consequently, it would seem that the rule laid down in the *Tower* case, *supra*, compels the conclusion that the article in controversy is not one of the "chains of all kinds" provided for in paragraph 329, *supra*. While it may be composed wholly, substantially wholly, or in chief value of chain, as material, nevertheless, the chain has lost its tariff identity as such as the result of manufacturing processes applied to it, and has become a new article of commerce, known only as a dog collar.

In order to be classified as "chains of all kinds" it is necessary that an article be designated as a *chain* of *some* kind. For example, a coin purse or a bracelet, conceivably constructed of chain, may not be classified under the provision for "chains of all kinds," in the absence of proof that such articles are commonly or commercially designated as chains.

In drawing the distinction between "chain" as material and "chains of all kinds, made of iron or steel," this court also pointed out in the *Tower* case, *supra*, that "this intent is evidenced by the fact that the proviso mentions 'articles manufactured wholly or in chief value of chain'." The proviso in paragraph 329 of the 1930 law is in the following terms:

*Provided*, That all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made, or of which chain is the component material of chief value.

We do not interpret this proviso to mean that all articles manufactured wholly or in chief value of chain are subject to classification under paragraph 329, *supra*, as urged by the plaintiff in its brief. On the contrary, it is our view that the Congress contemplated that certain articles manufactured wholly or in chief value of chain might find classification in other paragraphs of the tariff act, and out of an abundance of caution provided that such articles should not pay a lower rate of duty than that imposed on the chain of which they are made.

In other words, if dog collars, such as those before us, were classifiable under paragraph 397, *supra*, and subject to a rate of duty which was found to be lower than the rate imposed on the chain of which they were composed, as provided for in paragraph 329, such dog collars might still be classified under said paragraph 397 and nevertheless be subject to the duty prescribed in paragraph 329, by virtue of the proviso to the latter paragraph.

It is our conclusion that the context of said paragraph 329 clearly indicates that the proviso thereto is merely a minimum, and not a primary rate provision, and not one of classification.

In *Henry Pollak* (*Inc.*) v. *United States*, 18 C. C. P. A. (Customs) 219, T. D. 44402, the United States Court of Customs and Patent Appeals construed the following proviso to paragraph 1304 of the Tariff Act of 1922:

*Provided*, That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall pay a less rate of duty than that imposed upon the component paper of chief value of which such article is made.

The court was of the opinion that the proviso was "intended to provide a minimum, not a primary nor a maximum, rate of duty for articles composed wholly or in chief value of the papers therein pro-

vided for." See also *United States* v. *W. X. Huber Co.*, 30 C. C. P. A. (Customs) 183, C. A. D. 231.

In harmony with the rule established in the *Tower* case, *supra*, which was followed by this court in *Schoemann & Mayer, Inc.* v. *United States* (8 Cust. Ct. 325, C. D. 630), and upon the record herein, we hold that the dog collars covered by this protest are not classifiable as "chains of all kinds" within the purview of paragraph 329, *supra*, but were properly classified by the collector under paragraph 397, *supra*, as articles not specially provided for composed in chief value of metal, and dutiable at the rate of 45 per centum ad valorem.

The protest is therefore overruled and the decision of the collector is affirmed.

Judgment will be rendered accordingly.