(C.D. 2506)

NOVELTY IMPORT CO., INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided January 18, 1965)

Siegel, Mandell & Davidson (David Serko and Allan H. Kamnitz of counsel) for the plaintiff.
John W. Douglas, Assistant Attorney General (Richard J. Kaplan and Glenn E. Harris, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Certain items of imported merchandise, invoiced as hot mats, were assessed with duty at the rate of 15 cents per pound and 25 per centum ad valorem, pursuant to the provision in paragraph 1410 of the Tariff Act of 1930, for—

* * * views of any landscape, scene, building, place or locality in the United States, on cardboard or paper, not thinner than eight one-thousandths of one inch, by whatever process printed or produced, including those wholly or in part produced by either lithographic or photogelatin process (except show cards), occupying thirty-five square inches or less of surface per view, bound or unbound, or in any other form * * *.

It is the claim of plaintiff herein that said items are dutiable at only 17½ per centum ad valorem, within the provisions of paragraph 1413 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by T.D. 52462, for—

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for (except ribbon fly catchers or fly ribbons).

Samples of the importation are in evidence as plaintiff's collective exhibit 1. This exhibit consists of three items which were stipulated to be in chief value of paper, coated with a natural resin which protects the faces thereof against damage by water and moderate heat. Depicted on the faces of these articles are various views of the City of New York.

Plaintiff's witness, Mr. Sheldon Gilbert, a salesman for the Goldfarb Novelty Co., testified that he sells items such as plaintiff's exhibit 1, always in groups of three, to book, gift, and novelty stores in the Times Square and Long Island areas of New York. He described them as useful souvenirs since they are capable of serving as hot mats. He stated that he had personally used articles like exhibit 1 to protect furniture against hot food dishes on about a dozen occasions; that he had seen office personnel use them to protect their desks against hot coffee containers; and that he did not know of any other use for this type of merchandise.

The witness further testified that mats like those in plaintiff's collective exhibit 2 are sold by his competitor to similar trades for the same purposes.

It does not appear that plaintiff seriously disputes the fact that the merchandise in issue responds to the description in paragraph 1410, *supra*, for views of areas in the United States. What is urged here is that these items are, by reason of their being coated with resin, and of their use, allegedly as established by the instant record, something more than "mere views" of the United States, and, hence, are not covered by the provisions of paragraph 1410.

Counsel for the Government seeks to sustain the collector's action with the argument that the articles in issue are *eo nomine* provided for in paragraph 1410, irrespective of use; that an *eo nomine* provision, in the absence of a contrary expression of legislative intent, contemplates all forms of the article; that the pertinent portion of paragraph 1410 is more specific than the pertinent portion of paragraph 1413, and that, in any event, the evidence of use is insufficient to remove these items from the encompassing language of the American views provision.

If, indeed, use is the criterion for determining whether articles containing American scenes are something more than what is described by the explicit and comprehensive language of the provision here in question, and, hence, to be excluded from its scope, it must be obvious that the instant record is inadequate to show it.

Implicit in the construction of a designation where use is a material consideration is the underlying premise that the concept relates to chief use. *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472; *United States* v. *C. J. Tower & Sons*, 26 CCPA 1, T.D. 49534. Chief use is a question of fact which "should be established on the basis of testimony representative of an adequate geographical cross section of the nation." *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544. "The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally." *Same* v. *Same*, 28 Cust. Ct. 456, Abstract 56581, as quoted in C.A.D. 544.

Even if something less than the exacting requisites for showing chief use could suffice to support a finding that, by virtue of use, the articles at bar are more than mere views of localities in the United States, it is questionable whether the proof in this case would be sufficient for that purpose. Evidence of one witness' sales in a limited area, and of his observations on a few occasions of a particular use for these articles, scarcely serves to establish what they are or how they are used. As pointed out by counsel for defendant, since these items

are sold to souvenir shops in Times Square and Long Island, it is reasonable to suppose they are purchased for use elsewhere than in New York. Yet, there is not a scintilla of evidence to show whether in other sections of the country these articles are, in fact, used to protect furniture from hot dishes, or are displayed for their representations of New York locales, or are devoted to any other purposes.

It is true that use may be established by the testimony of one witness (*Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120) and that importers and others engaged in marketing imported products are generally possessed of knowledge of how their merchandise is used. *United States* v. *The Baltimore & Ohio R.R. Co. a/c United China & Glass Company*, 47 CCPA 1, C.A.D. 719. Still, the bases of their beliefs and the sources of their information are relevant considerations bearing upon the weight to be attached to their testimony. And when it is shown that a witness has had a very limited experience with the actual use of an article, and his sales thereof are confined to only a few localities, his description of the character and use of the article must be found lacking in substance or conviction.

Accordingly, the determination of the issue in this case might well rest upon the unconvincing nature of the proof, and a finding that the record lacks substantial evidence of a use which might serve to transform the subject merchandise into something more than a view of a locality in the United States. But, we are of opinion that even if the instant record did establish that these articles are hot plates, it could not avail to remove them from the scope of the provision for views of localities in the United States.

The provision in question is a very broad description of scenes of the United States in terms of the process by which they are reproduced, the substance of which they are made, the surface area they cover, and the form in which they are prepared. That it was the intention of Congress to include within the scope of this provision every view of the United States conforming to the specified dimensions, except show cards, regardless of the purpose for which it was produced, seems evident from the concluding phrase which reads "bound or unbound, or in any other form."

Such comprehensive language, in the literal sense, suggests the elimination of "form" as a pertinent characteristic in the consideration of the application of this provision to views of American places, and we apprehend no reason for construing this phrase otherwise than literally. It is clear that where it was the intention of the legislature to provide more specifically for certain items of printed matter, more specific language therefor was employed. So, for example, in the provision immediately preceding the one in issue the language reads "all post cards (not including American views) * * *," thus making

a particular form a controlling consideration. With respect to the instant provision, other factors than form appear to have been guiding principles.

We see no escape from the conclusion that this provision was meant to embrace all views of locales in the United States, if the view is the predominant characteristic of the article imported. We are fortified in this conclusion by the final phrase of the provision, and by the rule expressed in *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464, that—

* * * an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary and without proof of commercial designation, will include all forms of said article.

In every particular, the instant views conform to the statutory description. They are views of scenes in the United States; they are on cardboard or paper, not thinner than eight one-thousandths of 1 inch; they occupy less than 35 square inches of surface per view, and they are in other form than bound.

Counsel for plaintiff cites as persuasive of a contrary finding, nevertheless, the cases of *C. H. Powell Co.* v. *United States*, 52 Treas. Dec. 762, Abstract 4727; *O. G. Hempstead & Son* v. *United States*, 13 Treas. Dec. 894, T.D. 28292; *Schoemann & Mayer* v. *United States*, 11 Cust. Ct. 1, C.D. 780; *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T.D. 33365; *United States* v. *Sutherland International Despatch*, 21 CCPA 264, T.D. 46790; and *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794. Generally speaking, these cases stand for the proposition that an imported article has lost its identity as the article it was in its first estate and has become something more by virtue of some manufacturing process or additional treatment having the effect of fitting it for another or more limited function than it previously possessed. For the most part, we consider them to be irrelevant here, since except for the protective covering of natural resin, the merchandise at bar has not been shown to have been subjected to a manufacturing process which made it something more than the articles described and provided for in said paragraph 1410.

By contrast, the merchandise involved in the *Powell* case, *supra*, was described as follows:

The sample was found to consist of an oval block of wood about 9 inches long and 3½ inches wide with a metal ring on the back for hanging purposes. Part of an American postcard giving a view of some scene or landscape in the United States is pasted in the center and occupies a very small area of the surface. Above the postcard is painted a sky with clouds, and below a pastureland is painted so that there is a continuous picture effect on the wood.

Obviously, as held by the court, "the article as imported has lost its identity as merely a landscape view, the scene forming but a part of the manufactured article."

In the *Hempstead* case, *supra*, it was held, on authority of *Knauth* v. *United States*, T.D. 28184, that lithographic prints, mounted on cardboard, in a cardboard mat, ready for framing, were more than lithographic prints.

Whether or not the character of those lithographic prints was so altered by the processes of mounting and matting that a new article different from lithographic prints was produced, the court was not there concerned with a provision for lithographic prints in any form.

The treatment to which the instant merchandise was subjected, to wit, coating with a natural resin, did not serve to so subordinate the "view" aspect of the article as to create a new product beyond the reaches of the tariff description invoked by the collector. Neither can it be said that the use as a hot plate, if such be, in fact, the sole function of this item, so obscures its identity as a "view" that a classification elsewhere than in paragraph 1410, *supra*, is dictated. So long as the "view" remains a significant and substantial feature of the article imported, neither form nor use serves to remove it from the scope of the provision which plainly embraces views of American scenes.

Based upon the foregoing consideration, we find the contention of the plaintiff that the instant so-called hot plates are more than views of American scenes, and, hence, not classifiable in said paragraph 1410, to be without merit. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.