**No. 69778.**—Werner E. Wind *v.* United States, protests 58/16376, 58/18535, and 58/19699 (New York).

FORD, Judge: The protests enumerated in the schedule attached to and made a part of this decision were consolidated for trial. They relate to importations of 15 variations of what are known as tuck-tite locks and one other lock which is designated as a portfolio lock, invoice item M523, all of which are illustrated by plaintiff's collective exhibit 1.

The 15 tuck-tite locks are identified on the invoices by the following item numbers: T180, T220, T300, T301, T302, T303, T305, T362, T363, T422, T423, T445, T481, T483, and T533.

The locks in controversy were classified as luggage hardware by the collector of customs in paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiff contends that the locks above identified are not luggage hardware and should be classified as articles or wares, no specially provided for, composed wholly or in chief value of steel or brass, and

held dutiable at the rate of 21 per centum ad valorem in paragraph 397 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

The pertinent text of the statutes involved reads as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:
    Composed wholly or in chief value of gold, * * *

\*     \*     \*     \*     \*     \*     \*

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
        Woven wire fencing * * *

\*     \*     \*     \*     \*     \*     \*

        Other (except slide fasteners and parts thereof) _____ 22½% ad val.

Paragraph 397 of said act, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:
    Composed wholly or in chief value of platinum * * *

\*     \*     \*     \*     \*     \*     \*

    Typewriter spools * * *

\*     \*     \*     \*     \*     \*     \*

    Carriages, drays, * * *

\*     \*     \*     \*     \*     \*     \*

        Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except the following: * * * luggage hardware; * * *) _____ 21% ad val.

The only witness for the plaintiff was Werner E. Wind, the importer himself. The witness testified that he is president of the Wind Corp. and for the past 10 years he had been engaged in importing and selling locks throughout the United States, but mainly in the area about New York, New England, Philadelphia, Chicago, Middlewest, and the West Coast, and that the major wholesale markets are located in those areas. As a result of his experience, he had become intimately familiar with the character, construction, and uses of the locks in controversy. The sale of such locks by his company amounted to about one million a year.

An analysis of the testimony of record indicates that the following

items, to which the protest is limited, have the uses indicated opposite each item. It is noted that the uses to which item 301 applies were not disclosed in the testimonial record.

| Item No. | Uses |
| --- | --- |
| T180 | Billfolds, small purses, optical lens cases, sewing kits, scissor cases, eyeglass cases, nail clipper cases, comb cases, compass cases, key cases, cigarette cases, cigar cases, exposure meter cases, small instrument cases, wallets, and small personal leather cases. |
| T220 | Used for the same purpose as T180 and in addition for transistor radio cases, underarm bags, and plastic bags. |
| T300 T302 | Transitor radio cases, camera cases, plastic bags, bowling cases, diaries, photo albums, surgical cases, playing card kits, writing sets, shoe horn kits, cigar cases, flask kits, and sporting goods bags. |
| T303 T305 | Diaries, photo albums, brush cases, gun cases, stud boxes, golf bags, fishing rod cases, skating cases, utility cases, and small personal leather goods. |
| T362 T363 | Camera cases, portable radio cases, ladies' underarm bags, plastic bags, ladies' handbags, gun cases, and bowling bags. |
| T422 T423 | Ladies' handbags, beach bags, bowling bags, industrial cases, and instrument cases. |
| T445 | For attachment to the end of zippers used on different types of sporting goods bags, such as bowling bags, or on other types of zippered bags. |
| T481 | Physicians' bags and sample cases. |
| T483 | Physicians' bags, sample cases, and car sacks or car bags. |
| T533 | For attachment to the end of zippers used on bowling bags, utility bags, and small beach bags. |
| M523 | Primarily for portfolios carried under the arm. |

Witness Wind also stated that items T305, T445, T481, T483, and T533 have a limited use on suitcases, trunks, and overnight bags, but can only be used on lightweight luggage made from nylon, canvas, or plastic.

By oral stipulation, the parties have agreed that billfolds, small purses, diaries, photoalbums, stud boxes, and ladies' handbags are not luggage.

In addition to plaintiff's collective exhibit 1 referred to, *supra*, the following exhibits offered on behalf of plaintiff were received in evidence:

Collective exhibit 2—various locks imported and sold by plaintiff as luggage locks.

Illustrative exhibits 3 through 7 and 9—advertisements indicating uses of some of the locks in issue.

Illustrative exhibit 8—catalog of the Presto Lock Co.

Defendant offered the testimony of J. Leonard Harris, assistant to the general sales manager of the Presto Lock Co., Garfield, N.J., manufacturer of luggage hardware. He stated that he had held this position 10 years and had dealt with luggage manufacturers and other industries using luggage hardware throughout the United States. He testified that certain of the locks made by the Presto Lock Co. were similar to the items here in issue. As illustrative of the uses of such locks, certain pages from four issues of a magazine entitled "Luggage and Leather Goods," a Haire publication, were received in evidence as defendant's illustrative exhibits A through H, the pertinent illustrations being encircled in red ink by Witness Harris.

It is interesting to note the variety of articles upon which tuck-tite and portfolio locks of various sizes are used. As some indication of the diversity of such use, reference is made to defendant's illustrative exhibit C depicting an "air cruiser" bag and the camera-style carrying case for flasks both appearing on page 89, and the attaché case, with envelope enclosed, appearing on page 87. Attention is also directed to defendant's collective exhibit B illustrating a sports bag which, in addition to its main bag closure tuck-tite lock, has two small locks of similar type to fasten the outside pockets thereon.

This case, as it was presented to us originally, led to the issuance of an order by this court *sua sponte* setting aside the submission of the case and restoring it to the calendar in order "to receive a more definite description as to the character, construction, size, purpose, and so forth, of the articles upon which the 'Tuck-tite' and portfolio locks * * * are used and the extent of such use."

While extensive additional testimony was introduced as to the character and purpose of most of the articles at bar, the evidence as presented is seriously lacking in the extent of their use and particularly as to the *chief* use of the imported articles. And it is chief use which must be proven and will control the classification of the merchandise at bar.

Inherent in the classification of the collector of customs is the presumption that he has found every fact necessary to such classification, which in this case would include the presumption that the imported articles are hardware of the kind chiefly used on luggage. *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715.

The fact that plaintiff presented the testimony of only one witness would not in itself militate against the outcome of his claim since

the testimony of one witness can be as effective as that of a number. *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120.

It is incumbent upon the plaintiff, who by his protest is endeavoring to set aside said classification and have the court reclassify his merchandise, to produce satisfactory evidence that the collector's action was erroneous and that his claim should prevail. *United States* v. *E. B. Miller Association, Inc., J. M. Rodgers Co.*, 43 CCPA 14, C.A.D. 603.

The testimony before the court unfortunately is shrouded in indefiniteness as is evident from the following excerpts from the testimony offered on behalf of plaintiff. During the testimony of plaintiff's witness with regard to items T180 and T220, after stating that item T220 was slightly larger than T180, and in addition to being used for the same purposes (indicated in the listing above) "is used on transistor radio cases, or maybe underarm bags, plastic bags," the witness on being asked as to any other uses, replied—

Well, there are so many, actually it is very hard to draw specific lines among these items here because they grow gradually in size, and it is the decision of the manufacturer whether he wants a small or large lock with or without the key, according to the style of his item. [S.M. 14, 15.]

As to "plastic bags," one of the uses to which items T220, T300, T302, T362, and T363 are put, the record discloses—

A plastic bag is a very general denomination. It can be a flat bag, as just outlined in the underarm category, or it can be more voluminous. It can be round or square-shaped, about ten to fifteen inches long, about eight inches high or three or four inches deep. * * * They are used to carry small personal items, or sporting goods. [S.M. 108, 109.]

When testifying as to item T303 and its use on utility cases, brush cases, stud boxes, and so forth, on being asked whether said uses represent the chief uses of the items, the witness stated—

Well, there are a lot of additions that you could make. For instance, I think, golf bags, small sporting goods bags. *It is very hard to define a line of usage between these different items*, but these are just additions that I can think of right now that would add to the chief use of these specific uses that I just mentioned. [S.M. 122.] [Italics supplied.]

Against this background of vagueness and uncertainty, we have the testimony of a witness on behalf of defendant, a representative of an outstanding luggage hardware manufacturer and distributor, whose testimony, predicated on sales throughout the United States and knowledge of the use to which the articles are put, is to the effect that locks such as those at bar are used as luggage hardware.

In the circumstances of the present case, we are of the opinion that plaintiff has failed in his burden of proof and no other course is open to us but to overrule his protest claims in all respects.

Judgment will issue accordingly.